STUART F. DELERY
Assistant Attorney General

ANDRE BIROTTE JR.
United States Attorney
Central District of California

SHEILA M. LIEBER
Deputy Director

TAMRA T. MOORE
BENJAMIN L. BERWICK
E-Mail:Tamra.Moore@usdoj.gov
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Ave. NW
Washington, D.C. 20530
Telephone: (202) 514-8095
Facsimile: (202) 616-8460
DC Bar #488392

*Attorneys for Defendant Sebelius*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| HOSPITAL OF BARSTOW, INC. et al., <br><br> Plaintiffs, <br><br> vs. <br><br> KATHLEEN SEBELIUS, in her official capacity as Secretary of Health and Human Services, <br><br> Defendant. | Case No.: Cv-11-10638 (SVW-MAN) <br><br> **DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** <br><br> Date:   January  6, 2014 <br> Time:  1:30 pm <br> Courtroom: 6 <br><br> Trial Date: None set |

Defendant's Memorandum of Points and Authorities in Support of Defendant's

Cross-Motion for Summary Judgment

## TABLE OF CONTENTS

BACKGROUND ...................................................................................................4

    A.    The Medicaid Program ..................................................................4

    B.    California's State Plan Amendments .............................................6

    C.    This Litigation ...............................................................................8

STANDARD......................................................................................................10

ARGUMENT.....................................................................................................11

    I.    CMS's Decision to Approve SPA 08-009B1 Does Not Violate the
        Administrative Procedure Act...........................................................11

        a.    CMS's SPA approval decision is entitled to Chevron deference. ...........11

        b.    CMS's decision to approve SPA 08-009B1 was neither arbitrary
              nor capricious.....................................................................12

            1.    CMS properly considered all Section 30(A) factors.......................15

            2.    CMS's decision to focus primarily on access, rather than
                provider cost, was neither arbitrary nor capricious........................17

            3.    CMS reasonably concluded that the challenged rate
                reductions would not harm beneficiary access to hospital
                outpatient services.................................................................20

            4.    CMS's SPA approval process did not violate the APA................24

CONCLUSION..................................................................................................26

Defendant's Cross-Motion for Summary Judgment - i

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Alaska Dep't of Health & Soc. Servs. v. CMS,*
    424 F.3d 931 (9th Cir. 2005) ........................................................ 17

*Alexander v. Choate,*
    469 U.S. 287 (1985)........................................................................ 5

*Ark. Dep't of Health & Human Servs. v. Ahlborn,*
    547 U.S. 268 (2006)........................................................................ 5

*Arrington v. Wong,*
    237 F.3d 1066 (9th Cir. 2001) ...................................................... 22

*Barnes v. U.S. Dep't of Transp.,*
    655 F.3d 1124 (9th Cir. 2011) ...................................................... 12

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council,*
    467 U.S. 837 (1984)................................................................... 9, 11

*Douglas v. Indep. Living Ctr. of S. Cal.,*
    132 S. Ct. 1204 (2012)............................................................. 11, 17

*Hoosier Envt'l Council, Inc. v. U.S. Army Corps of Eng'rs,*
    105 F. Supp. 2d 953 (S.D. Ind. 2000) .......................................... 24

*Kahn v. Fed. Motor Carrier Safety Admin.,*
    648 F. Supp. 2d 31 (D.D.C. 2009) ................................................ 25

*Managed Pharmacy Care v. Sebelius,*
    716 F.3d 1235 (9th Cir. 2013) ................................................ *passim*

*National Cable & Telecomm. Ass'n v. Brand X Internet Servs.,*
    545 U.S. 967 (2005)........................................................................ 1

*Nw. Motorcycle Ass'n v. USDA,*
    18 F.3d 1468 (9th Cir. 1994) ........................................................ 10

*Orthopaedic Hospital v. Belshe,*
    103 F.3d 1491 (9th Cir. 1997) ..................................................... 1, 9

*Pa. Pharmacists Ass'n v. Houstoun,*
    283 F.3d 531 (3d Cir. 2002).......................................................... 16

*Research & Mfrs. of Am. v. Walsh,*
    538 U.S. 644 (2003)........................................................................ 5

*Ursack, Inc. v. Sierra Interagency Black Bear Grp.,*
    2009 WL 2422784 (N.D. Cal. Aug. 6, 2009) ................................ 10

*Wilder v. Va. Hosp. Ass'n,*
    496 U.S. 498 (1990)........................................................................ 4

**FEDERAL STATUTES**

5 U.S.C. § 701 ............................................................................... 1, 8

28 U.S.C. § 2202 .......................................................................................... 25

42 U.S.C. § 1396 .................................................................................. 1, 4, 5

**STATE STATUTES**

Cal. Welf. & Inst. § 10740 ........................................................................... 5

**FEDERAL RULES**

Fed. R. Civ. P. 56(c) ................................................................................... 10

**FEDERAL REGULATIONS**

42 C.F.R. § 420.12(c)(ii) ............................................................................... 6

42 C.F.R. § 430.12(c)(2)(i) ............................................................................ 4

**FEDERAL REGISTER**

65 Fed. Reg. 60,151 .................................................................................... 17

76 Fed. Reg. 26,342 .................................................................................... 18

Defendant's Cross-Motion for Summary Judgment - iii

This case is about reductions in Medicaid payments for hospital outpatient services proposed by the State of California and approved by the defendant, Kathleen Sebelius, Secretary of Health and Human Services ("the Secretary"), acting through her delegate, the Centers for Medicare and Medicaid Services ("CMS").  Plaintiffs, providers of hospital outpatient services, contend that the Secretary, in approving these payment reductions, failed to consider certain factors required – most notably provider costs,  under the Ninth Circuit's precedent in *Orthopaedic Hospital v. Belshe*, 103 F.3d 1491 (9th Cir. 1997) in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq* ("APA").

However, the analysis and interpretation of  the requirements of 42 U.S.C. § 1396(a)(30)(A) ("Section 30(A)") in *Orthopaedic Hospital* have been squarely rejected by the Ninth Circuit in *Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235 (9th Cir. 2013), which specifically held that the Secretary is not bound by *Orthopaedic Hospital* and that, under *National Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005) ("*Brand X*"), a case decided after *Orthopaedic Hospital*, her interpretation of the Medicaid Act, as embodied in her approval of a state plan amendment ("SPA"), is entitled to *Chevron* deference. And that deference applies to CMS's interpretation of Section 30(A) as embodied in the challenged SPA approval and to the Secretary's decision not to require that

Defendant's Cross-Motion for Summary Judgment - 1

California submit a study of costs incurred by hospitals providing outpatient services.

CMS did not act arbitrarily or capriciously in approving California's SPA regarding payment rate reductions for the services at issue here.  The record reflects that CMS conducted a careful and thorough analysis spanning almost three years, considering comments received from third parties as well as relevant studies, and engaging in many discussions with the California Department of Health Care Services ("DCHS").  As a result of that process, CMS considered several access analyses submitted by California, as well as a prospective monitoring plan under which California will quickly raise payment rates if an access problem is discovered.

Despite the voluminous record in this case, plaintiffs contend that CMS's decision to approve the challenged SPA was arbitrary and capricious, claiming that CMS failed to analyze (1) whether rate reductions would affect beneficiary access to hospital outpatient services, (2) whether the challenged rate reductions are consistent with efficiency, economy and quality of care as required by Section 30(A), and (3) whether the rate reductions are reasonably related to the costs incurred by hospitals providing outpatient services.  Plaintiffs also argue that CMS's review and approval of the challenged SPA violated the APA because it occurred in a manner inconsistent with public statements the Secretary made

concerning the need for transparency in the SPA approval process.  But none of these claims has merit.

The administrative record in this case belies plaintiffs' argument that CMS failed to analyze whether the challenged SPA would affect beneficiary access to hospital outpatient services.  To the contrary, CMS expressly found that beneficiaries would maintain the same level of access they enjoyed even with the implementation of the challenged SPA, and that the State's monitoring plan would ensure that the State resolved any potential access issues promptly and efficiently. The record demonstrates that CMS carefully considered Section 30(A)'s requirements of efficiency, economy, and quality of care.  That consideration led to CMS's conclusion that the challenged rate reductions would not diminish the quality of care afforded to Medicaid beneficiaries.  CMS also concluded that there likely would not be any efficiency and economy concerns because those concerns typically arise when the State seeks to increase payments, not decrease them. Finally, the Secretary's broad statements regarding her policy goals for the agency do not render either the administrative process, which included stakeholder input regarding the challenged SPA, or the challenged decision arbitrary and capricious and do not change the applicable statutory standards.

In short, CMS's decision to approve the challenged SPA was supported by substantial evidence in the record, and thus the agency acted reasonably in

approving the challenged rate reductions.  The Ninth Circuit has held that attempts, such as those made by plaintiffs in this case, to undermine CMS's decision by "delving into the minutiae of [CMS]'s approval, picking apart DCHS's research, and finding potential flaws in the same" are "inappropriate" when reviewing agency action and cannot serve as a basis for overturning the agency's decision. Accordingly, because CMS's decision does not violate either the APA or the Medicaid Act, the Court should deny plaintiffs' claims and grant summary judgment in favor of CMS.

## BACKGROUND

### A. The Medicaid Program

The Medicaid Program, established under Title XIX of the Social Security Act of 1935, 42 U.S.C. § 1396 *et seq.*, provides partial federal funding for state programs that pay for covered services provided to persons "whose income and resources are insufficient to meet the costs of necessary medical services."  42 U.S.C. § 1396-1; *see also Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 502 (1990).  To be eligible for federal funding, a state must develop a "plan for medical assistance" and submit it to the Secretary of Health and Human Services for approval through CMS.  42 U.S.C. § 1396a(b).  The Secretary must also approve amendments to a state plan that comply with the requirements of the Medicaid Act.  *See* 42 C.F.R. § 430.12(c)(2)(i).

The Medicaid Act contains 83 separate requirements with which each state plan for medical assistance must comply. *See generally* 42 U.S.C. § 1396a(a). The central provision at issue in this case requires a state plan to:

> provide *such methods and procedures* relating to the utilization of, and payment for, care and services available under the plan . . . as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.

*Id.* § 1396a(a)(30)(A) ("Section 30(A)") (emphasis added).

As the broad language in Section 30(A) reflects, states maintain considerable discretion in the day-to-day administration of their Medicaid programs. *Ark. Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 275 (2006). Indeed, states may "choose the proper mix of amount, scope, and duration limitations on coverage, as long as care and services are provided in 'the best interests of the recipients.'" *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 665 (2003) (citing *Alexander v. Choate*, 469 U.S. 287, 303 (1985)).

The State of California has elected to participate in the Medicaid program and therefore has agreed to comply with the program's requirements. The State has designated DHCS as the "sole agency of the State" responsible for administering and supervising its Medicaid program, known as Medi-Cal. *See* Cal. Welf. & Inst. § 10740. The Director of DHCS is responsible for developing California's state

plan for medical assistance and for submitting any necessary plan amendments to CMS.  *See* 42 C.F.R. § 420.12(c)(ii).

## B.    California's State Plan Amendments

Since 2008, the California legislature has enacted a series of payment rate reductions for services provided to beneficiaries of California's Medicaid program, Medi-Cal.  In 2008, California enacted Assembly Bill ("AB") 5 and AB 1183, which reduced Medi-Cal payment rates for certain health care providers, including providers offering outpatient services.   California then submitted a SPA to implement the legislation.  Subsequently, the State split the initial SPA into several SPAs, including 08-009B1, at issue here. SPA 08-009B1 was submitted on September 30, 2008.

On December 24, 2008, CMS requested that the State provide additional information regarding the challenged SPA.  *See* Administrative Record ("A.R.") HHS000147-173.  The State did not submit a response to CMS's request until 2010. *See id.*; *see also id.* at HHS000174.   On November 18, 2010, CMS disapproved numerous SPAs, including 08-0009B1, because the State had not provided sufficient information concerning the impact of the proposed cuts on beneficiary access to services as required by Section 30(A).  On November 19, 2010, California requested reconsideration of the SPAs, including the one challenged here.

On March 25, 2011, and on October 3, 2011, California submitted additional documentation demonstrating the 2008 SPAs' compliance with Section 30(A).  On October 27, 2011, after reviewing an access analysis, monitoring plan, and other materials submitted by the State, and conducting further discussions with California DHCS officials, CMS approved the rate reductions encompassed in the SPA 08-009B1 and others.  SPA 08-009B1 is the only one at issue in this case. As relevant here, SPA 08-009B1 generally reduced outpatient hospital services by ten percent for dates of service on or after July 1, 2008 through and including February 28, 2009 and by one percent for dates of service on or after March 1, 2009, through and including May 31, 2011.[1]

While this administrative process was working its course, various plaintiffs challenged AB 5 and AB 1183 in the courts, contending among other things that the rate reductions were inconsistent with Section 30(A).  Although the courts issued injunctions preventing California from implementing the 2008 and 2010 SPAs, they refused to enjoin payment rate reductions for certain hospital services, including hospital outpatient services because the plaintiff hospital providers had

---

[1] On April 1, 2009, California implemented a Supplemental Payment Program that provides periodic supplemental payments to hospitals participating in the Medi-Cal program.  CMS approved the Supplemental Payment Program, which became effective on April 1, 2009.  As a result of their receipt of supplemental payments under this CMS-approved program, plaintiffs do not challenge the adequacy of the Medicaid payments they received for the time period after April 1, 2009.  *See* Pls' Am. Compl., at ¶79.

Defendant's Cross-Motion for Summary Judgment - 7

failed to show that they would be irreparably harmed.

## C.   This Litigation

Shortly after CMS approved SPA 08-009B1, plaintiffs, 59 hospitals providing outpatient services to Medicaid beneficiaries, sued the Secretary.  *See* ECF No. 1; *see also* ECF No. 13.  Plaintiffs allege that her decision to approve the payment rate reductions in the challenged SPA violates Section 30(A) of the Medicaid Act and is arbitrary and capricious in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.  See id.*

On March 2, 2012, the Secretary moved to stay this case pending the Ninth Circuit's decision in the consolidated interlocutory appeal of four other cases, *Managed Pharmacy Care, et al. v. Sebelius, et al.*, in which providers had challenged, among other things, the Secretary's decision to approve SPAs submitted by the State of California containing payment rate reductions for certain Medicaid services.  *See* ECF No. 17.  In support of her stay motion, the Secretary argued that the outcome of the Ninth Circuit's decision in those appeals likely would substantially affect the outcome of this case.  *See id.*  The Court agreed and stayed proceedings in this case pending the Ninth Circuit's resolution of the consolidated appeal.

On May 24, 2013, the Ninth Circuit issued its decision in *Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235 (9th Cir. 2013).  As relevant here, the

Ninth Circuit made three key rulings.  First, the Court held that, under *Brand X*, the district court erred in finding that it was bound by the Ninth Circuit's decision in *Orthopaedic Hosp. v. Belshe*, 103 F.3d 1491 (9th Cir. 1997), which held that Section 30(A) requires the State to consider the costs of providing medical services subject to the proposed rate reductions because the agency was not a party to that case, and the Court did not have the benefit of the agency's interpretation.  Second, the Court held that the Secretary's interpretation of Section 30(A), that is, her interpretation that the statutory provision does not require that States submit cost studies to show compliance, is entitled to deference under the principles articulated in *Chevron U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837 (1984).  Finally, based on the administrative record before it, the Ninth Circuit concluded that the Secretary's decision to approve the challenged SPAs was neither arbitrary nor capricious.  *See id.* at 1250-51.  Because plaintiffs were unlikely to succeed on the merits of their claims, the Court reversed the district court's decisions, vacated the preliminary injunctions, and remanded the four cases to the district court for further proceedings consistent with the Ninth Circuit's opinion.[2]

On June 19, 2013, shortly after the Ninth Circuit issued its decision in *Managed Pharmacy Care*, this Court issued a scheduling order for a July 1, 2013

---

[2] Plaintiffs in the consolidated cases have filed petitions for writ of certiorari, seeking review of the Ninth Circuit's decision before the United States Supreme Court.  *Managed Pharmacy Care, et al.v. Sebelius*, Nos. 13-253 &13-380 (2013).  The Secretary intends to oppose plaintiffs' petitions.

status conference, requesting that the parties "be prepared to discuss what effect, if any, the Ninth Circuit's recent decision" in the *Managed Pharmacy Care* consolidated appeal had on this case.  Scheduling Notice, ECF No. 26.  On July 1, 2013, this Court held a status conference and set a summary judgment briefing schedule in this matter.  Minutes of Status Conference, ECF No. 29.  This matter is now before the Court on the parties' cross-motions for summary judgment.

## STANDARD

Federal Rule of Civil Procedure 56(c) permits this Court to grant summary judgment where the pleadings and materials in the record show "that there is no genuine issue as to any material fact" and that the moving party is entitled to summary judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Because the scope of this Court's review of plaintiffs' APA claim is confined to the administrative record designated by the Secretary, resolution of plaintiffs' claim "does not require fact finding on behalf of [the] court."  *Nw. Motorcycle Ass'n v. USDA*, 18 F.3d 1468, 1472 (9th Cir. 1994).  Indeed, because this Court's review of plaintiffs' APA claim is limited to the administrative record, there are "no questions of material fact that would render it inappropriate" to grant summary judgment.  *Ursack, Inc. v. Sierra Interagency Black Bear Grp.*, Civ No. 08-1808, 2009 WL 2422784, at *5 (N.D. Cal. Aug. 6, 2009).

# ARGUMENT

**I.   CMS's Decision to Approve SPA 08-009B1 Does Not Violate the Administrative Procedure Act.**

### a.   CMS's SPA approval decision is entitled to *Chevron* deference.

Plaintiffs do not dispute, nor can they, that CMS's decision that SPA 08-009B1 complies with the requirements of § 30(A) of the Medicaid Act is entitled to deference under the principles articulated in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  *See Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235, 1250 (9th Cir. 2013) (holding that *Chevron* deference applies to CMS's SPA approval decisions).  As the Ninth Circuit recently explained in a decision applying *Chevron* deference to CMS's approval of other SPAs submitted by the State of California, when Congress enacted the Medicaid Act, it "expressly delegated to the Secretary (through CMS) the authority to interpret § 30(A) and to determine whether a State's Medicaid program conforms to federal requirements." *Id.* at 1247.  And because "[t]he statute uses words like 'consistent,' 'sufficient,' 'efficiency,' and 'economy,' without describing any specific steps a State must take in order to meet those standards[,]" "'the agency's expertise is relevant in determining its application.'"  *Id.* at 1247-48 (quoting *Douglas v. Indep. Living Ctr. of S. Cal.*, 132 S. Ct. 1204, 1210 (2012)).   Accordingly, because Congress expressly delegated to CMS the authority to interpret the Medicaid Act, including the undefined terms in Section 30(A), the agency's "exercise of discretion in the

Defendant's Cross-Motion for Summary Judgment - 11

'form and context' of a SPA approval," including the SPA challenged here, is entitled to *Chevron* deference.  *Id.* at 1248 (internal citation omitted); *see also id.* at 1249 (holding that the Secretary's interpretation that Section 30(A) requires a certain result (access) and not a particular methodology (cost studies) is a permissible interpretation of the statutory provision).

Because the Court must defer to CMS's decision that SPA 08-009B1 complies with the requirements of § 30(A) of the Medicaid Act, the only question this Court must resolve is whether CMS's decision to approve SPA 08-009B1 was arbitrary and capricious.  Both the Ninth Circuit's decision in *Managed Pharmacy Care* and the administrative record in this case demonstrate that the answer to that question is no.

### b.  CMS's decision to approve SPA 08-009B1 was neither arbitrary nor capricious.

CMS's decision to approve SPA 08-009B1 must be upheld "as long as there is a rational connection between the facts found and the conclusions made." *Barnes v. U.S. Dep't of Transp.*, 655 F.3d 1124, 1132 (9th Cir. 2011).  This is so even if the agency's decision was "made with less than ideal clarity[.]"  *Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235, 1250 (9th Cir. 2013) (internal quotation and citation omitted). "[A]s long as 'the agency's path may reasonably be discerned' from the record[,]" the Court must uphold the agency's action.  *Id.* (internal citation omitted).  Here, as the administrative record in this case

demonstrates, CMS reached a well-reasoned conclusion that SPA 08-009B1 does not violate Section 30(A) after a nearly three-year iterative process involving substantial submissions from third parties and discussions with the State.

Indeed, that process resulted in the State submitting thorough access analyses to CMS that "adequately demonstrated beneficiary access," *see* A.R. HHS01951, to hospital outpatient services at issue in this case.  As part of those analyses, the State considered the characteristics and needs of the Medi-Cal population and actual access to care as measured by provider availability and utilization rates over a nearly three year period.  *See id.* at HHS01598-1763. Based on this data, the State determined whether the rate reduction would negatively impact beneficiary access to hospital outpatient services and concluded that it would not.  *See e.g.*, *id.* at HHS00220 (explaining that, "based on its study of paid claims data, DHCS has concluded that the [payment rate reductions]" would not have a "negative effect[] to access to outpatient services" ); *id.* at HHS00218 (same).

The State's analyses focused largely on two key facts.  First, DHCS had "determined that hospitals in recent years [had] received substantial increases in reimbursement."  *Id.* at HHS00285.  Based on the increased reimbursement rates hospitals had received in recent years, DHCS concluded that neither a ten percent payment rate reduction for hospital outpatient services during the July 1, 2008, to

February 28, 2009 time period, nor a one percent payment rate reduction for the same services during the March 1, 2009, through May 31, 2011 time period would negatively impact beneficiary access. *See id.* Second, "there were almost 300 hospitals actively enrolled in the [Medi-Cal] program providing outpatient services" and those hospitals "also receive substantial supplemental reimbursement" from the Supplemental Payment Program the State implemented in 2009. *Id.* Both the substantial number of hospitals participating in Medi-Cal and the "substantial supplemental reimbursement" these hospitals received led the State to conclude that "Med-Cal recipients would continue to have access to hospital outpatient services consistent with federal law." *Id.*

In addition to the comprehensive access analyses submitted by the State, CMS based its decision to approve SPA 08-009B1 on California's implementation of a monitoring plan that measures access to, among other services, hospital outpatient services by geographic area on a continuing basis. *See id.* HHS01477-1558; *see also id.* at HHS001951. Under that plan, DHCS will monitor a variety of indicators, including Medi-Cal beneficiary enrollment, provider availability, and service use and outcomes. *See, e.g.*, *id.* at HHS01707 (explaining the types of data and information DCHS will monitor to assess beneficiaries' access to Medi-Cal covered services). If the State's investigation reveals "that an access problem is due to a provider payment reduction, DHCS will immediately change the payment

Defendant's Cross-Motion for Summary Judgment - 14

levels[,]" consistent with federal law, to address the problem.   *Id.* at HHS01540.

Given the substantial evidence DCHS provided supporting its conclusion that a

payment rate reduction to hospital outpatient services would not negatively affect

beneficiary access to those services and the State's implementation of a monitoring

plan that will measure access to those services on a continuing basis, it was

reasonable for CMS to conclude that "the State was able to provide metrics" that

demonstrate beneficiary access to hospital outpatient services.  *Id.* at HHS01951;

*see also Managed Pharmacy Care*, 716 F.3d at 1250 (concluding that it was

appropriate for CMS to rely on the State's "82-page comprehensive" monitoring

plan to support its conclusion that beneficiary access would not be affected by the

payment rate reductions).

### 1.  CMS properly considered all Section 30(A) factors.

Plaintiffs largely ignore the fact that CMS's decision to approve SPA 08-

009B1 was the result of a three-year extensive administrative process and argue

instead that data before the agency "did not address any of the statutorily required

elements" of Section 30(A).  Pls' First Am. Compl. at 27.  But plaintiffs are wrong

because the record reflects precisely the opposite.  The monitoring plan submitted

by the State makes clear that it is not simply addressing access to *any* care; it is

addressing access to *high quality* care.  The State acknowledges, for example, that

"[p]rovisions in both Federal and State [law] mandate that administrators ensure

access to *high quality healthcare* for its Medi-Cal beneficiaries." A.R. HHS01839. The plan also observes that access should be evaluated in part by reference to "efficiency, economy, and quality of care." *Id.* at HHS01499. And the monitoring plan establishes a toll-free help line that will document calls relating to, among other things, "Health care quality." *Id.* at HHS01505. Finally, the monitoring plan includes specific measures of quality – described as "access outcome measures" – such as preventable hospitalization rate. *Id.* at HHS01531.

CMS's acceptance of the monitoring plan as sufficient evidence that quality would not deteriorate is consistent with the text of Section 30(A), which does not require independent direct evidence of quality, but instead requires only that a state plan include "methods and procedures" to assure that quality is maintained. *See Managed Pharmacy Care*, 716 F.3d at 1249 (instructing that CMS "must be free to consider, for each State, the appropriate way for that State to demonstrate compliance with § 30(A)"). Although the record may reflect more concern on CMS's part about adequate beneficiary access than about efficiency, economy, or quality of care, CMS found sufficient safeguards against any decrease in quality of care provided. Further, the Secretary has found that concerns about efficiency and economy generally arise when the State *increases* payments to providers, not when it decreases them. *See Pa. Pharmacists Ass'n v. Houstoun*, 283 F.3d 531, 537 (3d Cir. 2002). For example, in interpreting the broad terms "efficiency" and

Defendant's Cross-Motion for Summary Judgment - 16

"economy," CMS has promulgated Upper Payment Limit ("UPL") regulations that "place an upper limit on overall aggregate payments" for certain types of services. 65 Fed. Reg. 60,151-01 (Oct. 10, 2000). These regulations are entitled to *Chevron* deference. *See Alaska Dep't of Health & Soc. Servs. v. CMS*, 424 F.3d 931, 940 (9th Cir. 2005) ("[T]he undefined terms 'efficiency' and 'economy' leave a gap that the Administrator  permissibly filled via case-by-case adjudication."). Thus, as the foregoing demonstrates, "[i]t was not arbitrary or capricious for [CMS] to consider California's monitoring plan" when it determined that the challenged SPA satisfies the requirements of Section 30(A). *Managed Pharmacy Care*, 716 F.3d at 1250.

## 2. CMS's decision to focus primarily on access, rather than provider cost, was neither arbitrary nor capricious.

In an effort to undermine CMS's approval of SPA 08-009B1, plaintiffs put forth a scattershot of arguments, *see* Pls' Am. Compl. ¶89, the essence of which is that CMS failed to consider adequately the impact the challenged rate reductions would have on hospital outpatient services.  But plaintiffs are wrong on this point.

For example, plaintiffs claim that the State failed to perform a reasonable study of the costs incurred by "efficient economical hospitals [] providing quality outpatient services," *see* Pls' Am. Compl. ¶75, rendering CMS's approval decision arbitrary and capricious.  But CMS has consistently taken the position that Section 30(A) does not require states to base Medicaid payment rates on the cost incurred

by providers.  *See, e.g.*, Br. of the United States as Amicus Curiae, *Douglas v. Indep. Living Ctr.*, No. 09-958, at 9-10 (2010); Br. of the United States as Amicus Curiae, *Belshe v. Orthopaedic Hosp.*, 1997 WL 33561790, at *6-*12 (1997); Proposed Rule, Dep't of Health & Human Servs., Ctrs. For Medicare & Medicaid Servs., 76 Fed. Reg. 26,342, 26,344 (May 6, 2011).  This is because, in CMS's view, cost studies are often extremely difficult to obtain and may not be informative or necessary.  For a variety of reasons access issues may not arise even if providers are not fully compensated for the cost of providing services, making cost data an unreliable proxy for access.  *See Managed Pharmacy Care*, 716 F.3d at 1249 (explaining that "beneficiary access to Medicaid services 'appears to be driven by factors independent of the costs of the services'") (internal citation omitted).  CMS also expressed its position in this case.  *See, e.g.*, *id.* at HHS00953.

The Ninth Circuit has expressly rejected the same argument that plaintiffs advance here, holding that CMS's interpretation that Section 30(A) does not require states to submit cost studies in support of a requested SPA is entitled to *Chevron* deference.  "The statute says nothing about cost studies," leaving "the decision regarding *how* states may comply" with Section 30(A)'s requirements to CMS.  *Managed Pharmacy Care*, 716 F.3d at 1249.  As the Ninth Circuit explained in *Managed Pharmacy Care*:

> [B]y its terms § 30(A) requires a substantive result – reimbursement rates must be consistent with efficiency, economy, and quality care, and sufficient

> to enlist enough providers to ensure adequate beneficiary access. . . .  The position that costs might (or might not) be one appropriate measure by which to study beneficiary access, depending on the circumstances of each State's plan, is entirely reasonable.  Each State participating in Medicaid has unique, local interests that come to bear.  [CMS] must be free to consider, for each State, the most appropriate way for that State to demonstrate compliance with § 30(A).

*Id.* at 1249.

CMS has never required cost studies in determining whether a SPA complies with Section 30(A).   This is equally true with respect to the challenged SPA.  In CMS's view, "the appropriate focus is on access."  A.R. HHS00953.  And as discussed above, CMS determined, based on the access analyses and monitoring plan the State submitted, that SPA 08-009B1 complies with the requirements of the Medicaid Act, including Section 30(A).  Given this determination, it was neither arbitrary nor capricious of CMS to approve the challenged SPA without the submission of a cost study.  *See Managed Pharmacy Care*, 716 F.3d at 1245, 1250-51 (holding that CMS's approval of SPAs implementing reimbursement rate reductions for certain Medicaid-eligible services was neither arbitrary nor capricious "even though cost data was not available with respect to all of the services").

### 3. CMS reasonably concluded that the challenged rate reductions would not harm beneficiary access to hospital outpatient services.

Plaintiffs' claim that CMS approved SPA 08-009B1 without considering whether Medi-Cal beneficiaries have the same access to hospital outpatient services as the general population is likewise without merit.  *See* Pls' Am. Compl. ¶¶75, 93.  CMS expressly requested data demonstrating how the State determined that "the proposed reimbursement rate reductions for hospital outpatient services would be sufficient to enlist enough providers to assure access to care and [Medicaid] services at least to the same extent that such care and services are available to the general population in the geographic area," *see* A.R. HHS00210, 218, 220.  *See also id.* at HHS00957 (requesting that the State provide analysis "of the geographic distribution of Medi-Cal participating Outpatient Hospital providers, including a comparison of Contract Outpatient Hospital providers to Non-Contract Outpatient Hospital providers").

In response to CMS's request, the State submitted comprehensive access analyses, *id.* at HHS01598-1681, that analyzed, among other information, beneficiary access to hospital outpatient services, focusing on provider availability and utilization within the State, *see id.* at HHS01374.  To prepare that analysis, the State identified data elements both statewide and by two county-based geographic groupings (metropolitan and non-metropolitan), allowing DHCS to "analyze the

availability of [hospital outpatient] services both statewide and in similar county regions." *Id.* Analyzing claims data, detailed records reflecting payments and services rendered to beneficiaries, and annual financial disclosures submitted by hospital providers over a three-year period in which payment rate reductions were in effect for some of that time period, *see id.* at HHS01374, 1375, CMS concluded that "the implementation of the [payment rate] reductions complied with [Section 30(A)'s requirement] that care and services are available at least to the extent that care and services are available to the general population in the geographic area. *Id.* at HHS01952.

Moreover, the State found that, although the "Medi-Cal enrollment over the same period increased[,]" "access to hospital outpatient services remained constant despite an increase in enrollment." *Id.* Perhaps most significantly, the State determined that access and utilization "were clearly not impacted" notwithstanding the implementation of both a ten percent payment reduction that was in effect "from July 2008 through February 2009" and a one percent payment reduction that was "in effect for March and a portion of April 2009." *Id.* In other words, "the rate of participation among hospital providers [in Medi-Cal] remained constant [] [over] the 3-year period, even during the period of the provider payment reductions." *Id.*

Thus, as the record demonstrates, CMS reasonably concluded that the challenged rate reductions "complied with [Section] 30(A) of the Act so that care and services are available at least to the extent that care and services are available to the general population in the geographic area." *Id.* at HHS01952; *see also Managed Pharmacy Care*, 716 F.3d at 1251 (holding that the "[h]undreds of pages of analysis submitted by DHCS support [CMS]'s conclusion that the SPAs comply with § 30(A) and are unlikely to affect beneficiary access in a detrimental way.").

Notwithstanding this analysis, plaintiffs claim that the challenged rate reductions will negatively affect beneficiaries' access to hospital outpatient services because hospitals will "reduce Medi-Cal services in response to inadequate Medi-Cal rates[,]" which are made all the more "woefully inadequate," they claim, given that hospitals "are [already] required to provide [the same] treatment under [the Emergency Treatment and Active Labor Act]."[3] Pls' Am. Compl. ¶89.  But this is simply wrong.  As discussed above, there were almost 300 hospitals actively participating in Medi-Cal providing hospital outpatient services to beneficiaries.  *See* A.R. HHS00285.  And the State provided evidence that the number of participating hospital outpatient providers remained constant even during periods of time in which the State had implemented rate reductions, and when federal law "mandated access to [] [hospital outpatient] services." *See id.* at

[3] In 1986, Congress enacted the Emergency Treatment and Active Labor Act ("EMTALA"), which requires hospitals to provide emergency medical treatment to patients regardless of their ability to pay. *See Arrington v. Wong*, 237 F.3d 1066, 1069 (9th Cir. 2001).

HHS01378.  Furthermore, in recent years, many of these same hospitals have received substantial increases in Medicaid reimbursement from the State's Supplemental Payment Program.  *Id.*  Based on this analysis, it was not unreasonable for CMS to conclude that the challenged rate reductions were unlikely to negatively affect beneficiary access.

Plaintiffs take issue with this analysis, accusing CMS of ignoring the impact of EMTALA's requirement that hospitals provide emergency care without regard to ability to pay.  Of course not all hospital outpatient services fall within the scope of EMTALA.  But even if EMTALA partially explains beneficiary access notwithstanding reductions in rates, this in no way undermines CMS's conclusion, based on utilization and provider participation, that the rate reductions did not and would not result in a violation of Section 30(A)'s access requirement.

And if plaintiffs' prediction regarding a reduction in beneficiary access to hospital outpatient services comes to fruition, the State's implementation of a monitoring plan safeguards against potential access issues that may arise as a result of the challenged rate reductions.  Under the monitoring plan, the State continually will measure and assess both utilization and provider participation rates over time, and the monitoring plan provides a Medi-Cal help line for beneficiaries to report directly to the State any hospital outpatient service access issues.  *See* A.R. HHS001502, HHS001527.  "DHCS's monitoring plan supports the reasonable

conclusion that the rate reductions are not expected to negatively impact beneficiary access, but that if such problems occur, the State can quickly respond and address them." *Managed Pharmacy Care*, 716 F.3d at 1250.

### 4. CMS's SPA approval process did not violate the APA.

In a last ditch effort to overturn CMS's approval of the challenged SPA, plaintiffs attack the agency's SPA approval process, arguing that it "occurred in a manner that was inconsistent with the Secretary's own public statements concerning the need for 'transparency' in the SPA approval process." Pls' Am. Compl. ¶94. Plaintiffs claim that "[i]nterested parties were not afforded meaningful access to the information exchanged" between CMS and the State. *Id.* However, plaintiffs cannot point to, nor is there, any statutory or regulatory provision requiring CMS to provide to third parties the information exchanged between the agency and the State during the SPA approval process. Plaintiffs hang their hat on the Secretary's aspirational statements regarding the "need for 'transparency'" in the SPA approval process. But the Secretary's broad statements regarding her policy goals for the agency do not render either the administrative process, which included stakeholder input regarding the challenged SPA,[4] or the

---

[4] Indeed, the State published notification of its intent to request approval of the challenged SPA, and interested parties were given an opportunity to comment upon the same. The administrative record in this case contains over two dozen letters from hospital associations, provider associations, and other interested stakeholders, expressing their views on the challenged rate reductions. *See, e.g.*, A.R. HHS00263-HHS00267, HHS00759-HHS00951. Noticeably absent

challenged decision arbitrary and capricious.  *See Hoosier Envt'l Council, Inc. v. U.S. Army Corps of Eng'rs*, 105 F. Supp. 2d 953, 974 (S.D. Ind. 2000) (explaining that aspirational statements in state regulation do not render agency's decision arbitrary and capricious); *see also Kahn v. Fed. Motor Carrier Safety Admin.*, 648 F. Supp. 2d 31, 37-38 (D.D.C. 2009) (rejecting plaintiff's argument that redactions made by agency in FOIA case "run[] contrary to" Administration's goal of increasing government transparency, reasoning that a "policy pronouncement" does not "alter[] the application of a federal statute").

In conclusion, the record shows that CMS's decision to approve SPA 08-009B1, which was the result a three-year iterative administrative process, involving lengthy discussions with the State and input from interested third parties, was neither arbitrary nor capricious, but, rather, thoughtful and well-reasoned. Plaintiffs' effort to "delve[] into the minutiae of [CMS]'s approval, pick[] apart DHCS's research and finding[s] [and find] *potential* flaws [in the same]" is, as the Ninth Circuit held, "an inappropriate exercise[,]" *see Managed Pharmacy Care*, 716 F.3d at 1251, and not a basis on which the Court should grant plaintiffs summary judgment on their APA claim or their claim for declaratory relief.[5]

//

from the record are letters from any of the plaintiff hospitals in this case, expressing their view on the challenged rate reduction.

[5] Because plaintiffs cannot prevail on either their APA claim or their claim under the Medicaid Act, they are not entitled to declaratory relief under 28 U.S.C. § 2202.

Defendant's Cross-Motion for Summary Judgment - 25

# CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' cross-motion for summary judgment and grant summary judgment in favor of defendant.

DATED:  November 7, 2013          Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

ANDRÉ BIROTTE JR.
United States Attorney
Central District of California

SHEILA LIEBER
Deputy Director

s/ *Tamra T. Moore*
TAMRA T. MOORE
BENJAMIN L. BERWICK
E-Mail: Tamra.Moore@usdoj.gov
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, D.C. 20530
Phone: (202) 514-8095
Fax: (202) 616-8460

*Attorneys for Defendant Sebelius*