STUART F. DELERY
Assistant Attorney General

ANDRE BIROTTE JR.
United States Attorney
Central District of California

SHEILA M. LIEBER
Deputy Director

TAMRA T. MOORE
BENJAMIN L. BERWICK
E-Mail:Tamra.Moore@usdoj.gov
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Ave. NW
Washington, D.C. 20530
Telephone: (202) 514-8095
Facsimile: (202) 616-8460
DC Bar #488392

*Attorneys for Defendant Sebelius*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| HOSPITAL OF BARSTOW, INC. et al., <br><br> Plaintiffs, <br><br> vs. <br><br> KATHLEEN SEBELIUS, in her official capacity as Secretary of Health and Human Services, <br><br> Defendant. | Case No.: Cv-11-10638 (SVW-MAN) <br><br> DEFENDANT'S OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT <br><br> Date: January 6, 2014 <br> Time: 1:30 pm <br> Courtroom: 6 <br><br> Trial Date: None set |

Defendant's Opposition to Plaintiffs' Cross-Motion for Summary Judgment and

Reply in Support of Defendant's Cross-Motion for Summary Judgment

# INTRODUCTION

In her opening brief, the Secretary of Health and Human Services ("the Secretary") demonstrated that her decision to approve the payment rate reductions in the State Plan Amendment ("SPA") 08-009B1 submitted by the State of California comports with the requirements of the Administrative Procedure Act, 5 U.S.C. § 706 ("APA").  Indeed, the record in this case reflects that, the Secretary, through her delegate, the Centers for Medicare & Medicaid Services ("CMS"), conducted a careful and thorough analysis and determined that, notwithstanding the payment rate reductions to hospital outpatient services contained in the challenged SPA, beneficiaries would continue to have substantially the same level of access they had previously.  And in the event that any potential access problems arise, the State's monitoring plan ensures that the State will resolve those issues expeditiously.  Thus, based on the record before the agency, it was entirely reasonable for CMS to conclude that, under the challenged SPA, beneficiaries would continue to have access to hospital outpatient services as required by 42 U.S.C. § 1396a(30)(A).  *See Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235, 1250-51 (9th Cir. 2013) (upholding under the APA CMS's approval of similar SPAs submitted by the State of California based on CMS's review of access and utilization metrics submitted by the State as well as the State's monitoring plan).

Defendant's Opposition to Plaintiffs' Cross-Motion for Summary Judgment and Reply in Support of Defendant's Cross-Motion for Summary Judgment - 1

Plaintiffs' slapdash arguments aimed at "picking apart" the State's analysis do nothing to undermine the validity of the SPA approval decision. The administrative record belies plaintiffs' assertions that the State submitted no data comparing Medi-Cal beneficiaries' access to hospital outpatient services with that of the general population. Indeed, the record demonstrates that CMS ensured that Medi-Cal beneficiaries had adequate access to hospital outpatient services by analyzing, among other things, the total number of providers by type and geographic area and by examining trends in provider participation rates. Nor is there any merit to plaintiffs' claim that the State's access and utilization metrics fail to account for beneficiaries' access to hospital outpatient services resulting from hospitals' obligations under the Emergency Treatment and Active Labor Act ("EMTALA"). To the contrary, the record shows precisely the analysis the State undertook to assess beneficiaries' access to hospital outpatient services and that analysis took into account both the hospitals' federal law obligations and the substantial payments the hospitals have received in recent years as a result of the State's Supplemental Payment Program. In any event, the Ninth Circuit has admonished that arguments such as the ones plaintiffs advance here, that "delve[] into the minutiae of [CMS]'s approval, pick[] apart [the State]'s research and finding[s] [and find] potential flaws [in the same], are "an inappropriate exercise" under the APA. *Id.* at 1251. Finally, plaintiffs' reliance on an out-of-circuit

decision reviewing CMS's approval of an entirely different SPA and a record that is in no way similar to the one before this Court is inapposite.

In short, despite their best (albeit unpersuasive) effort, plaintiffs have fallen well short of demonstrating that CMS's decision to approve the challenged rate reductions in SPA 08-009B1 was arbitrary or capricious in violation of the APA. Because CMS's decision to approve the SPA is supported by the substantial evidence in the record and controlling Ninth Circuit precedent, the Court should find that the agency acted reasonably and grant summary judgment in its favor.

## ARGUMENT

### A. The Administrative Record Belies Plaintiffs' Claim that CMS Failed to Consider Beneficiaries' Access to Hospital Outpatient Services.

As the Secretary demonstrated in her opening brief , *see* Def's Br., ECF No. 42-1, at 12-15, 17-24, there is no merit to plaintiffs' claim that CMS failed to consider whether Medi-Cal beneficiaries have the same access to hospital outpatient services as the general population if the State implemented the rate reductions contained in SPA 08-009B1.  Quite the contrary, the record shows that CMS expressly requested that the State provide data demonstrating that the rate reductions to hospital outpatient services would not affect beneficiaries' access to hospital outpatient care and Medicaid services and that beneficiaries would have access to these services "at least to the same extent that such care and services are

available to the general population in the geographic area," *see* A.R. HHS00210, 218, 220. *See also id.* at HHS00957 (requesting that the State provide analysis "of the geographic distribution of Medi-Cal participating Outpatient Hospital providers, including a comparison of Contract Outpatient Hospital providers to Non-Contract Outpatient Hospital providers"). And, in response to CMS's request, the State submitted access analyses that showed that there "were almost 300 hospitals actively enrolled in the [Medi-Cal] program providing outpatient services[;]" *id.* at HHS00285, that these same hospitals also have received "substantial supplemental [Medicaid] reimbursement" from the State's Supplemental Payment Program, *id.*; and that the number of participating hospital outpatient providers remained constant even during periods of time in which the State had implemented rate reductions, *see id.* at HHS01378.

In addition to assessing provider availability, CMS reviewed data the State submitted demonstrating beneficiaries' utilization of hospital outpatient services within the State over a three-year period in which payment rate reductions were in effect for some of that time period. *See, e.g.*, *id.* at HHS01598-1681. As explained in detail in the Secretary's opening brief, Def's Br., ECF No. 42-1, at 20-24, based on CMS's review of the State's access and utilization analyses, *see id.* at HHS01374-75, the agency reasonably concluded that "the implementation of the [payment rate] reductions complied with [Section 30(A)'s requirement] that care

Defendant's Opposition to Plaintiffs' Cross-Motion for Summary Judgment and
Reply in Support of Defendant's Cross-Motion for Summary Judgment - 4

and services are available at least to the extent that care and services are available to the general population in the geographic area. *Id.* at HHS01952. Indeed, as reflected in the record, the State's utilization analysis showed that "access to hospital outpatient services remained constant" during this time period despite the fact that Medi-Cal enrollment over the same period increased. *Id.* at HHS01378. And of particular importance for CMS, the State's analyses demonstrated that beneficiaries' access to, and utilization of hospital outpatient services "were clearly not impacted" notwithstanding the implementation of both a ten percent payment reduction that was in effect "from July 2008 through February 2009" and a one percent payment reduction that was "in effect for March and a portion of April 2009." *Id.*

CMS did not rely only on the State's comprehensive access and utilization analyses when it decided to approve the challenged SPA; the agency also considered California's implementation of a monitoring plan that measures access to, among other services, hospital outpatient services by geographic area on a continuing basis. *See id.* at HHS01374-78; HHS01477-1558; *see also id.* at HHS001951. As explained in detail in the Secretary's opening brief, *see* Def's Br., ECF No. 42-1, at 14-15, 23-24, the State's implementation of a monitoring plan safeguards against potential hospital outpatient services access issues that may arise as a result of the challenged rate reductions. If the State's investigation

reveals "that an access problem is due to a provider payment reduction, [the State] will immediately change the payment levels[,] consistent with federal law, to address the problem. *Id.* at HHS01540.

Plaintiffs pay short shrift to CMS's reliance on the State's access analysis, utilization data, and implementation of a monitoring plan, arguing that these considerations are "irrelevant[,] *see* Pls' Br., ECF No. 4, at 15. But the Ninth Circuit has rejected the precise argument that plaintiffs advance here, holding that the State's access and utilization "metrics" and monitoring plan are indeed relevant in assessing whether a SPA satisfies the statutory requirements of § 30(A) . *See Managed Pharmacy Care*, 716 F.3d at 1250 (it was neither arbitrary nor capricious for CMS to find that the challenged SPAs comply with § 30(A)'s requirements based on the agency's review of the State's data showing provider availability and utilization of services, among other things). In any event, CMS's October 27, 2011 approval letter expressly states that the agency considered metrics that included data about both *the total number of providers* by type and geographic location and the *number of providers participating in Medi-Cal*, by type and geographic location. *See* A.R. HHS01964. By analyzing this data, CMS determined that the vast majority of providers of hospital outpatient services in all geographic areas

Defendant's Opposition to Plaintiffs' Cross-Motion for Summary Judgment and
Reply in Support of Defendant's Cross-Motion for Summary Judgment - 6

participated in Medi-Cal. *See id.* at HHS01379.[1]  Plaintiffs take issue with the manner in which CMS concluded that beneficiaries have sufficient access to hospital outpatient services.  But it is not plaintiffs who get to decide *how* to assess compliance with the Medicaid Act; it is the Secretary.  *See Managed Pharmacy Care*, 716 F.3d at 1249 (instructing that "[t]he Secretary must be free to consider, for each State, the appropriate way for the State to demonstrate compliance with § 30(A)").

Plaintiffs also attempt to undermine the validity of CMS's approval of the challenged SPA by complaining about the page-length of the State's access report and accusing CMS of failing to "identify the inadequacies" in the same.  Pls' Br., ECF No. 41, at 15, 16.  Setting aside the fact that plaintiffs are wrong on both accounts,[2] *see, e.g.*, A.R. HHS00285, 287, 00752, 1378-80, these arguments are precisely the type of "delv[ing] into the minutiae" and "picking apart [the State's] research and finding potential flaws" that the Ninth Circuit has admonished are "an inappropriate exercise" when reviewing whether CMS's decision to approve SPA

---

[1] The reference to "inpatient services" within the text of Table 5 is incorrect.  As the heading to Table 5 suggests, this table is an analysis of the percent of hospitals providing outpatient services in Medi-Cal.  *See* A.R. HHS01379.

[2] Plaintiffs make much of the fact that the administrative record supporting the Secretary's decision to approve SPA 08-009B1 "consists of thousands of pages, the majority of" of which relate "to services other than hospital outpatient services."  Pls' Br., ECF No. 41, at 15.  However, as plaintiffs are well aware, SPA 08-009B1 did not address only payment rate reductions to hospital outpatient services.  SPA 08-009B1 contained payment rate reductions for other Medicaid eligible services.

Defendant's Opposition to Plaintiffs' Cross-Motion for Summary Judgment and
Reply in Support of Defendant's Cross-Motion for Summary Judgment - 7

08-009B1 comports with the requirements of the APA.  *Managed Pharmacy Care*, 716 F.3d at 1251.

As the Ninth Circuit explained in *Managed Pharmacy Care*:

> The 'Secretary shall approve' plans and plan amendments that comply with the requirements set forth in § 30(A).  42 U.S.C. § 1396a(b).  *How* should the Secretary determine that compliance?  Under the APA the answer must be, in any way that is not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'  5 U.S.C. § 706(2).  CMS's decision that [the challenged SPA] meet[s] the requirements of § 30(A) neither failed to consider an important aspect of the problem, nor relied on factors Congress did not intend it to consider.

716 F.3d at 1251.  Because CMS's "path" to approving SPA 08-009B1 "can be reasonably discerned" from the administrative record in this case,  the Court should grant summary judgment in favor of the Secretary.  *Id*.

**B. CMS's Conclusion that the Challenged Rate Cuts in SPA 08-009B1 Would Not Affect Beneficiary Access to Hospital Outpatient Services Was Neither Arbitrary Nor Capricious.**

Plaintiffs' claim that the State's access analysis is flawed because it failed to consider the effect of the challenged rate reductions on hospitals in light of their statutory obligations under the Emergency Treatment and Active Labor Act ("EMTALA"), *see* Pls' Br., ECF No. 41, at 17, is likewise unavailing.  The Secretary explained in her opening brief, *see* Def's Br., ECF No. 42-1, at 23, even if EMTALA contributes to beneficiary access, this does not undermine CMS's conclusion that the rate reductions and would not lead to a violation of § 30(A)'s

Defendant's Opposition to Plaintiffs' Cross-Motion for Summary Judgment and
Reply in Support of Defendant's Cross-Motion for Summary Judgment - 8

access requirement.  To that point, the number of Medi-Cal participating hospital outpatient providers has remained constant, even during periods of time in which the State had implemented payment rate reductions.  *See* A.R. HHS01378.  This is so notwithstanding the hospital providers' obligations under EMTALA.  Moreover, these same hospitals have received substantial increases in Medicaid payments from the State's Supplemental Payment Program.  *Id.* at HHSS00285.   And, as the Secretary explained in her opening brief, *see* Def's Br., ECF No. 42-1, at 23, not all hospital outpatient services fall within the scope of EMTALA.  Finally, the State's implementation of a monitoring plan protects against potential access issues that may arise as a result of the challenged rate reductions.  *See* A.R. HHS001502, HHS001527.  Based on the foregoing, it was neither arbitrary nor capricious for CMS to conclude that the challenged SPA was unlikely to negatively access to hospital outpatient services.

     Plaintiffs' remaining arguments are also easily dispensed with.  First, plaintiffs' claims that the State failed to determine "what overall access to hospital outpatient services . . . would have been absent EMTALA" and "used utilization as a proxy for access[,]" Pls' Br., ECF No. 41, at 17, are again the type of niggling arguments that do not serve as a basis for overturning CMS's approval decision.  *See Managed Pharmacy Care*, 716 F.3d at 1251.

Defendant's Opposition to Plaintiffs' Cross-Motion for Summary Judgment and
Reply in Support of Defendant's Cross-Motion for Summary Judgment - 9

Moreover, plaintiffs' reliance on the Third Circuit's decision in *Christ the King Manor v. Sebelius*, 730 F.3d 291 (3d Cir. 2013) is entirely misplaced. This Court is bound by the decision of the Ninth Circuit in *Managed Pharmacy Care*, not by a decision of the United States Court of Appeals for the Third Circuit. The Third Circuit's decision in *Christ the King Manor* also has no bearing here. In that case, the Third Circuit held that CMS's decision to approve a SPA submitted by the Commonwealth of Pennsylvania containing rate reductions for private nursing facilities was arbitrary and capricious in violation of the APA. *Id.* at 314. The court reached that decision based on its review of the particular administrative record in that case, which the court described as "remarkably thin" and devoid of any "studies or analyses of any kind" except "a spreadsheet comparing rates under the proposed SPA with those paid the previous year" and Pennsylvania's "unsupported assertion" that its SPA complied with § 30(A)  *Id.* at 309, 312.[3]

By contrast, the record in this case demonstrates that, as the Ninth Circuit held in affirming CMS's SPA approvals in *Managed Pharmacy Care*, CMS approved the payment rate reductions to hospital outpatient services in SPA 08-

---

[3] According to the Third Circuit, it was unreasonable for CMS to approve the challenged rate reductions based on a purported "misunderstand[ing]" of the "SPAs effect on Pennsylvania's rate calculation methodology." *Id.* at 310; *see also id.* at 314 ("[T]he record suggests that the agency misunderstood the proposed [payment rate] changes and blessed the SPA based solely on the absolute increase in payments from the previous year.") While the Secretary disagrees with the Third Circuit's analysis, it is irrelevant to the analysis in this case.

Defendant's Opposition to Plaintiffs' Cross-Motion for Summary Judgment and
Reply in Support of Defendant's Cross-Motion for Summary Judgment - 10

009B1 after a three-year iterative process involving submissions by the State that analyzed the characteristics and needs of the Medi-Cal population and actual access to care as measured by hospital outpatient service availability and utilization rates over a nearly three year period. *See* A.R. HHS00285, HHS01374, HHS001378-80. And perhaps most relevant to this Court's determination of whether SPA 0-009B1 complies with the APA, the Ninth Circuit has already blessed CMS's reliance on these metrics when the agency assesses the State's compliance with § 30(A)'s requirements. *See Managed Pharmacy Care*, 716 F.3d at 1250-51.[4]

### C. Plaintiffs Have Waived Their Claim that the SPA Approval Process Violated the APA.

In their complaint, plaintiffs argued that the SPA approval process "occurred in a manner that was inconsistent with the Secretary's own public statements concerning the need for 'transparency' in the SPA approval process" in violation

---

[4] Plaintiffs' reliance on the Ninth Circuit's decision in *California Ass'n of Rural Health Clinics v. Douglas*, Nos. 10-17574, 10-17622, -- F.3d --, 2013 WL 5184355 (9th Cir. Sept. 17, 2013), is likewise without merit. That suit involved a challenge to a California state law that eliminated certain Medi-Cal benefits that the State deemed optional, including adult dental, podiatry, optometry and chiropractic services. *Id.* at *2. Plaintiffs, several associations whose members provided Medi-Cal services, claimed that the Medicaid Act preempted the State's law. The Ninth Circuit agreed, holding, among other things, that the State law violated the unambiguous terms of the Medicaid Act by eliminating services expressly referenced in the Act. *Id.* at *8. Here, plaintiffs do not claim, nor could they that § 30(A) is unambiguous or that CMS's interpretation of the Medicaid Act as embodied in the SPA somehow conflicts with the unambiguous terms of § 30(A).

Defendant's Opposition to Plaintiffs' Cross-Motion for Summary Judgment and
Reply in Support of Defendant's Cross-Motion for Summary Judgment - 11

of the APA. Pls' Am. Compl., ¶94. Specifically, plaintiffs claimed that "[i]nterested parties were not afforded meaningful access to the information exchanged" between CMS and the State. *Id.* However, in their opening brief, plaintiffs failed to address this argument. Because plaintiffs failed to raise this claim, they have waived it, and the Court should not consider it. *See Center for Sierra Nevada Conservation v. U.S. Forest Serv.*, 832 F. Supp. 2d 1138, 1164 n.23 (E.D. Cal. 2011) ("failure to raise an issue in an opening brief waives the issue") (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048-49 (9th Cir. 2003)).[5]

## CONCLUSION

For the foregoing reasons and those set forth in the Secretary's opening brief, the Court should deny plaintiffs' cross-motion for summary judgment and grant summary judgment in favor of defendant.

DATED: December 9, 2013  Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

ANDRÉ BIROTTE JR.
United States Attorney
Central District of California

SHEILA LIEBER
Deputy Director

s/ *Tamra T. Moore*
TAMRA T. MOORE
BENJAMIN L. BERWICK
E-Mail: Tamra.Moore@usdoj.gov
Trial Attorney
United States Department of Justice

---

[5] Nor is there any requirement that CMS publicize all of its deliberations with States.

Defendant's Opposition to Plaintiffs' Cross-Motion for Summary Judgment and Reply in Support of Defendant's Cross-Motion for Summary Judgment - 12

Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, D.C. 20530
Phone: (202) 514-8095
Fax: (202) 616-8460

*Attorneys for Defendant Sebelius*