**FOLEY & LARDNER LLP**
ATTORNEYS AT LAW
555 SOUTH FLOWER STREET, SUITE 3500
LOS ANGELES, CA  90071-2411
TELEPHONE:    213.972.4500
FACSIMILE:     213.486.0065

ROBERT C. LEVENTHAL, CA Bar No. 119969
RLEVENTHAL@FOLEY.COM
A. JOEL RICHLIN, CA Bar No. 246318
JRICHLIN@FOLEY.COM

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOSPITAL OF BARSTOW, INC., et al., | Case No: CV-11-10638 SVW (MANx) |
| Plaintiffs, | **SUPPLEMENTAL BRIEF IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| KATHLEEN SEBELIUS, SECRETARY OF UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, | Date: N/A<br>Time: N/A<br>Ctrm:  6 |
| Defendant. | Complaint Filed: December 22, 2011<br>FAC Filed: January 27, 2012<br>Judge: Hon. Stephen V. Wilson |

Pursuant to the Court's March 10, 2015 Order, the Plaintiffs submit this Supplemental Brief, addressing the three issues identified by the Court in its Order.

**ISSUE 1: Is there data in the administrative record that supports CMS's claim that it based its approval on "metrics [that] included data which provided: Total number of providers by type and geographic location *and* participating Medi-Cal providers by type and geographic area."**

In its letter approving SPA 08-009B1, CMS claimed that: "From March 25, 2011, through approximately September 30, 2011, CMS has been working with the State to refine the information initially submitted and, as a result of this collaborative process, the State was able to provide metrics that adequately demonstrated beneficiary access. In general, metrics included data which provided: Total number of providers by type and geographic location and participating Medi-Cal providers by type and geographic area . . . ."

In Plaintiffs' summary judgment motion, Plaintiffs pointed out that "Although the administrative record consists of almost two thousand pages, the majority of the record relates to services other than hospital outpatient services. The Department's entire analysis of the adequacy of Medi-Cal hospital rates is contained in a seven-page report. (HHS01374 – HHS01380.) The entire discussion of outpatient services is contained in less than two pages of the report, page 5 and half of page 6. (HHS01378-79.) This discussion includes no mention of the level of access to hospital outpatient services by the general public and no comparison of access to these services by Medi-Cal patients."

In its opposition, CMS did not meaningfully dispute this allegation and did not identify any portion of the administrative record that contained the required comparison. If such documentation existed, it was up to CMS to identify it in its opposition. Although only CMS knows what data it was referring to in its approval letter, as far as Plaintiffs are aware the administrative record contains no metrics comparing Medi-Cal patients' access to providers with that of the general

public by geographic area.

Additionally, in evaluating access to care, it is necessary to do more than simply look at the number of providers who provided one or more Medi-Cal services. One must look at whether the provider is as open to Medi-Cal patients as it is to members of the general public. There is nothing that prohibits providers from discriminating against Medi-Cal patients and a provider is free to put a cap on the number of Medi-Cal patients it is willing to treat.

Because of this fact, a mere comparison of the number of providers who accepted one or more Medi-Cal patients with the number of providers in the geographic area is meaningless unless one also looks at the number of Medi-Cal patients that the Medi-Cal providers are willing to accept and the amount of time that it takes a Medi-Cal patient to get seen by his or her health care provider. The correct question is whether a Medi-Cal beneficiary can get an appointment with a medical provider as easily as a member of the general public, not merely an analysis of how many providers accepted one or more Medi-Cal patients.

Finally, as was explained in Plaintiffs' summary judgment motion, the federal Emergency Medical Treatment and Active Labor Act ("EMTALA") requires hospital emergency rooms to treat all patients suffering from an emergency medical condition without regard to their ability to pay. Thus, every hospital in California that has an emergency room is virtually guaranteed to have treated Medi-Cal patients in the emergency room. This access does not result from the adequacy of the Medi-Cal rates, but from the mandate of EMTALA.

Since the Medicaid Act requires that the **rates** be adequate to ensure access, CMS must look at whether, absent the dictates of EMTALA, the rates would be adequate to ensure access. Since emergency services are a major element of hospital outpatient services, CMS cannot look at the amount of access standing alone, it must determine whether the rates were adequate to create the access or whether EMTALA created the access.

2
PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT
CASE NO. CV-11-10638 SVW (MANx)
4828-6106-8835.1

**ISSUE 2: Is it arbitrary and capricious for CMS to assert that it is relying on metrics that "general[ly]" included a particular category of data where the specified data does not appear in the administrative record.**

A court's review of an administrative agency's decision under the Administrative Procedure Act, 5 U.S.C. § 706, is generally limited to information in the administrative record. CMS does not contest that it is limited to its administrative record and has not attempted to introduce into evidence anything that is not within the administrative record.

It is obviously arbitrary and capricious for CMS to claim that it relied upon data that is not in the administrative record. Any such data, if it existed, would have been included in the administrative record, and CMS does not claim that any such data was somehow left out of the administrative record.

Instead, it appears that the sole basis for CMS's decision to approve the hospital outpatient rate cuts was based upon data that does not exist. It was clearly arbitrary and capricious to rely on data that does not exist and the Court should overturn CMS's decision because it was based on non-existent data.

**ISSUE 3: Does the phrase "geographic area" as used in 42 U.S.C. § 1396a(30)(A) allow for a comparison of statewide data or does it require a more granular comparison.**

The phrase "geographic area" as used in 42 U.S.C. § 1396a(30)(A) cannot mean statewide data. 42 U.S.C. § 1396a(30)(A) sets forth the requirements that a state must meet in formulating its state plan for Medicaid services. If the intent of the statute was to simply require a statewide access analysis, there would have been no need to use the phrase "geographic area" because a state plan, by definition, covers only the state that is implementing it. The plain meaning of the statute therefore requires a more granular analysis.

Aside from the plain statutory language, the purpose of the statutory access requirement is to make sure that Medicaid beneficiaries can get the medical care

3
PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT
CASE NO. CV-11-10638 SVW (MANx)

4828-6106-8835.1

that they need.  Medicaid beneficiaries are, by definition, indigent members of society.  Because they lack funds, it is difficult for them to travel very far in order to obtain medical services.  It would obviously be of little benefit to a Medi-Cal beneficiary who lives in San Diego that he could receive medical treatment in Sacramento.  Thus, it would be arbitrary and capricious for CMS or the State to rely on available medical providers in Sacramento to satisfy access requirements for beneficiaries in San Diego.

Furthermore, 42 U.S.C. § 1396a(30)(A) requires that the Medi-Cal beneficiaries have the same access as the general population.  This means that if a member of the general population need only travel 5 miles on average to obtain treatment, the Medi-Cal beneficiary should not be required to travel 150 miles to obtain treatment.  If the distance between the Medi-Cal beneficiary and the available medical provider creates an obstacle to obtaining care, then the access is not the same as that enjoyed by the general public.

Under the Medicaid and Medi-Cal programs, many beneficiaries are required to sign up for Medicaid Health Maintenance Organizations, commonly referred to as Medicaid Managed Care Organizations ("MCOs") to obtain their care.  CMS and the California Department of Health Care Services ("CDHCS") recognize that access to care depends on care being available near the residences of the Medicaid beneficiaries in the managed care context.

Both CDHCS and CMS have promulgated regulations regarding the access to care that the Medicaid MCOs must provide to their members that require an access analysis that is more granular than a statewide analysis.  *See* 42 C.F.R. § 438.207 (requiring data demonstrating that each MCO "Maintains a network of providers that is sufficient in number, mix, and **geographic distribution** to meet the needs of the anticipated number of enrollees in the service area" (emphasis added)); 22 Cal. Code Regs. §§ 53885, 53922.5 (providing that under Medi-Cal managed care, the MCO must be able to provide **each enrollee** with a primary care

4

physician **within 10 miles and 30 minutes** of the enrollees home or workplace).

Since both CMS and the State acknowledge, as they must, that the geographic location of the provider must be near enough to the Medi-Cal beneficiary to enable the beneficiary to travel to the provider (despite their limited financial means), CMS cannot claim that a statewide access analysis is sufficient. Any analysis must take into account the ability of the enrollee to travel to the provider for services. The 30 minute, ten-mile radius, standard that CDHCS requires from MCOs would appear to be in the range of reasonable access. A State wide standard would be arbitrary and capricious, because it would not measure access at all.

DATED: APRIL 13, 2015

**FOLEY & LARDNER LLP**
ROBERT C. LEVENTHAL
A. JOEL RICHLIN

BY:    /S/ *ROBERT C. LEVENTHAL*
       ROBERT C. LEVENTHAL
       ATTORNEYS FOR PLAINTIFFS