FILED
CLERK, U.S. DISTRICT COURT

Sept 17, 2015

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ PMC _____ DEPUTY

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HOSPITAL OF BARSTOW, INC. et al.,

          Plaintiffs,

          v.

SYLVIA M. BURWELL, in her official capacity as Secretary of Health and Human Services,[1]

          Defendant.

CASE NO. 2:11-cv-10638 (SVW-MAN)

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [41], GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [42], AND ENTERING JUDGMENT THEREON

## I.    INTRODUCTION

     This case concerns payment rates for hospital outpatient services under California's Medi-Cal program. The Court must decide whether the approval of California State Plan Amendment ("SPA") 08-009B1 contravenes Section 30A of the Medicaid Act, 42 U.S.C. § 1396a(a)(30)(A). SPA 08-009B1 reduces payment rates for services rendered from July 1, 2008 through February 28, 2009 by 10 percent; and for services rendered on or after March 1, 2009 by 1 percent. The issue before the Court is complicated by the fact that the Secretary of Health and Human Services ("the Secretary"), acting through the Centers of Medicare and Medicaid

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Sylvia M. Burwell is automatically substituted as a defendant in her official capacity as Secretary of Health and Human Services.

Services ("CMS"), retroactively approved SPA 08-009B1's payment rates for hospital outpatient services based on historical data from when the rate reduction was in effect.[2]  However, regardless of this unique factual history, the Court approaches these issues in the context of reviewing an administrative agency's action.  Thus, the Court must also consider the proper level of deference to be given to CMS's decision.

Presently before the Court are the parties' cross-motions for summary judgment.  (Dkts. 41 & 42.)  For the reasons discussed below, the Court GRANTS Defendant's motion for summary judgment, (dkt. 42), and DENIES Plaintiffs' motion for summary judgment, (dkt. 41).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    FACTUAL BACKGROUND

Though the parties disagree on their import, the relevant facts are undisputed: Plaintiffs are hospitals providing outpatient services to Medicaid beneficiaries.  (Def.'s SUF ¶ 17.)  The federal Medicaid program provides partial federal funding for state programs that pay for covered services for persons "whose income and resources are insufficient to meet the costs of necessary medical services."  (Def.'s SUF ¶ 1.)  To be eligible for federal funds, a state must submit to the Secretary (through CMS) a "plan for medical assistance."  (Def.'s SUF ¶ 2.)  Congress granted the Secretary authority to approve amendments to a state plan.  (Def.'s SUF ¶ 3.)

The State of California has elected to participate in the federal Medicaid program and has agreed to comply with the Medicaid program's requirements.  (Def.'s SUF ¶ 6.)  Thus, to receive federal Medicaid funds, California must submit a state plan to CMS.  (Def.'s SUF ¶ 2.)  California's Department of Health Care Services ("DHCS") is responsible for administering and supervising California's Medicaid program, Medi-Cal.  (Def.'s SUF ¶ 6.)

On September 30, 2008, California submitted SPA 08-009 to CMS.  (Def.'s SUF ¶ 7.)  On October 29, 2008, California split that SPA into several SPAs, including SPA 08-009B1.  (Def.'s SUF ¶ 8.)  SPA 08-009B1 reduces payment rates for hospital outpatient services rendered from July 1, 2008 through February 28, 2009 by 10 percent and for hospital outpatient services

_____

[2]  Moreover, before approving SPA 08-009B1, CMS approved California's 2009 legislation entitling hospitals to supplemental payments in addition to the Medi-Cal rates.  (Pls.' Mem. P. & A. 4 & n.2; HHS00285.)

1   rendered on or after March 1, 2009 by 1 percent.  (Def.'s SUF ¶ 15.)

2       On December 24, 2008, CMS requested from California additional information regarding

3   SPA 08-009B1.  (Def.'s SUF ¶ 9.)  California did not respond to CMS's request until March

4   2010.  (Def.'s SUF ¶ 10.)

5       On November 18, 2010, CMS disapproved SPA 08-009B1 because California had not

6   provided sufficient information regarding the impact of the proposed cuts on beneficiary access

7   to hospital outpatient services as required under § 30A of the Act.  (Def.'s SUF ¶ 11.)  On the

8   same day, California asked CMS to reconsider its disapproval of SPA 08-009B1.  (Def.'s SUF ¶

9   12.)

10      From March 25, 2011 to October 3, 2011, California submitted to CMS additional

11  documentation in support of SPA 08-009B1.  (Def.'s SUF ¶ 13.)  Though the parties attempt to

12  characterize these materials in various ways, the administrative record shows that the materials

13  submitted included the following: (1) data showing that the percent of hospitals providing

14  outpatient services to Medi-Cal beneficiaries remained nearly constant and well above 50 percent

15  from 2007 through 2009, (HHS01379)[3]; and (2) data examining the total utilization of hospital

16  outpatient services per 1,000 beneficiary months  statewide, in metropolitan counties, and in non-

17  metropolitan counties, and showing that hospital outpatient service utilization remained constant

18  or increased from 2007 to 2009, (HHS01378).  Nevertheless, Defendant admits that California's

19  data regarding the percentage of hospitals providing outpatient services to Medi-Cal beneficiaries

20  examined only statewide numbers.  It did not examine the percentage of participating hospital

21  outpatient service providers on a more granular level    such as by examining the percentage of

22  participating hospital outpatient service providers in metropolitan and non-metropolitan counties.

23  (Dkt. 57: Def.'s Supp. 3.)  California also proposed a "comprehensive monitoring plan" to

24  identify and address deficiencies in Medi-Cal beneficiaries' access to health care.  (Def.'s SUF ¶

25  13.)  CMS also received comments regarding SPA 08-009B1 and other SPAs from various

26  hospitals, provider associations, and other interested parties.  (Def.'s SUF ¶ 14.)

27  
28  ---

[3]  In 2007 and 2008, 81 percent of hospitals provided services to Medi-Cal beneficiaries. (HHS01379.) In 2009, 80 percent of hospitals provided services to Medi-Cal beneficiaries. (*Id.*)

1    On October 27, 2011, CMS approved SPA 08-009B1. (Def.'s SUF ¶ 16.) In its October

2    27 letter, CMS approved SPA 08-009B1 and two other SPAs not here at issue. (HHS01952.) In

3    this letter, CMS stated that it had been working with California "to refine the information

4    initially submitted" and that as "a result of this collaborative process, the State was able to

5    provide metrics that adequately demonstrated beneficiary access." (HHS01951.) According to

6    CMS, "[i]n general, these metrics included data which provided . . . [the] [t]otal number of

7    providers by type and geographic location and participating Medi-Cal providers by type and

8    geographic area[.]" (*Id.*)

9    **B.    PROCEDURAL HISTORY**

10    On December 22, 2011, Plaintiffs filed the instant suit challenging the Secretary's

11    decision to approve SPA 08-009B1. (Dkt. 1.) On January 27, 2012, Plaintiffs filed their

12    amended complaint. (Dkt. 9.) Plaintiffs assert claims under the Administrative Procedure Act

13    ("APA") , 5 U.S.C. §§ 701 06, and for declaratory relief. (Dkt. 9.)

14    On March 13, 2012, the Court granted Defendant's *ex parte* application to stay the case

15    pending the Ninth Circuit's resolution of a related case: *Managed Pharmacy Care v. Sebelius*,

16    716 F.3d 1235, 1240 (9th Cir. 2013) *cert. denied*, 134 S. Ct. 900 (2014) *and cert. denied sub*

17    *nom. California Med. Ass'n v. Sebelius*, 134 S. Ct. 986 (2014). (Dkt. 20.) The Ninth Circuit

18    decided *Managed Pharmacy Care* on May 24, 2013.

19    On November 7, 2013, the parties filed the instant cross motions for summary judgment.

20    (Dkts. 41 & 42.) On March 6, 2015, this Court directed supplemental briefing.[4] (Dkt. 53.) On

21    March 24, 2015, the Court granted the parties' stipulation for an extension of time to file their

22    supplemental briefing. (Dkt. 55.) The Court thus now addresses the parties' respective motions

23    with the benefit of their supplemental submissions.

24    **III.    LEGAL STANDARD**

25    Federal Rule of Civil Procedure 56 requires summary judgment for the moving party

26    when the evidence, viewed in the light most favorable to the nonmoving party, shows that there

27

28    [4]  On April 24, 2015, plaintiffs Fallbrook Hospital Corporation and San Benito Health Care
District voluntarily dismissed their claims. (Dkt. 59.) The claims asserted by the 57 other
Plaintiffs remain pending.

1   is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a

2   matter of law.  Fed. R. Civ. P. 56(a); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th

3   Cir. 1997). The moving party bears the initial burden of establishing the absence of a genuine

4   issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  On an issue

5   for which the moving party does not have the burden of proof at trial, the moving party may

6   satisfy this burden by "'showing'   that is, pointing out to the district court   that there is an

7   absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

8   **IV.    DISCUSSION**

9        Plaintiffs claim that the Secretary's decision to approve SPA 08-009B1 violated the APA

10   and was not in accordance with applicable law.  To resolve Plaintiffs' claims, the Court must

11   determine whether the Secretary properly interpreted and applied § 30A.  To resolve this claim,

12   the Court must first determine the proper level of deference to afford to the Secretary's

13   interpretation.

14        **A.    LEGAL STANDARD**

15        Under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837

16   (1984), a court must "abide by an agency's interpretation or implementation of a statute it

17   administers if Congress has not directly spoken 'to the precise question at issue' and if the

18   agency's answer is 'permissible' under the statute." *Managed Pharmacy Care*, 716 F.3d at 1246

19   (quoting *Chevron*, 467 U.S. at 842  43).  If congressional intent regarding the precise question at

20   issue is clear from the statute's language, then no deference is accorded.  *Resident Councils of*

21   *Washington v. Leavitt*, 500 F.3d 1025, 1030 (9th Cir. 2007).  Instead, a statute's language is

22   controlling when its meaning "is plain and unambiguous." *Id.* (quoting  *United States v.*

23   *Maria  Gonzalez*, 268 F.3d 664, 668 (9th Cir.2001)).

24        Not all administrative actions are entitled to *Chevron* deference.  *Managed Pharmacy*

25   *Care*, 716 F.3d at 1246 (citing *United States v. Mead Corp*., 533 U.S. 218 (2001)).  Instead,

26   courts defer to an agency's interpretation or implementation of a particular statutory provision

27   "(1) when it appears that Congress delegated authority to the agency generally to make rules

28   carrying the force of law, and (2) the agency interpretation claiming deference was promulgated

1   in the exercise of that authority." *Id.* (internal quotation marks omitted) (quoting *Mead*, 533 U.S.

2   at 226 27).

3        The second *Mead* prong depends on the "form and context" of the agency's interpretation

4   of the statute. *Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 826 (9th Cir. 2012) (en

5   banc). "It is fair to assume generally that Congress contemplates administrative action with the

6   effect of law when it provides for a relatively formal administrative procedure tending to foster

7   the fairness and deliberation that should underlie a pronouncement of such force." *Id.* (quoting

8   *Mead*, 533 U.S. at 230 31). Even in the absence of formal procedures, deference may be

9   required where there are other circumstances "reasonably suggesting" that Congress intended

10  deference to the agency's decision. *Managed Pharmacy Care*, 716 F.3d at 1247 (quoting *Mead*,

11  433 U.S. at 231). Examples of circumstances favoring *Chevron* deference include: "the

12  interstitial nature of the legal question, the related expertise of the [a]gency, the importance of the

13  question to administration of the statute, the complexity of that administration, and the careful

14  consideration the [a]gency has given the question over a long period of time[.]" *Id.*

15        **B.    APPLICATION**

16        It is undisputed that Congress granted the Secretary authority to approve amendments to

17  state plans. However, Plaintiffs argue that the Secretary's interpretation of § 30A is not entitled

18  to deference because the relevant statutory language is clear and unambiguous. Section 30A

19  requires, *inter alia*, that a state plan:

20        provide such methods and procedures relating to the utilization of, and the
          payment for, care and services available under the plan . . . as may be
21        necessary . . . to assure that payments are consistent with efficiency,
          economy, and quality of care and are sufficient to enlist enough providers so
22        that care and services are available under the plan at least to the extent that
          such care and services are available to the general population in the
23        geographic area[.]

24  42 U.S.C. § 1396a(a)(30)(A).

25             1.    Prior Case Law

26        In *Managed Pharmacy Care*, the Ninth Circuit vacated a preliminary injunction in a case

27  challenging the Secretary's approval of two SPAs. The Court noted that CMS had "explicitly

28  approved California's SPAs as consistent with the requirements of § 30(A) even though cost data

6

1    was not available with respect to all of the services, thereby determining that the lack of cost

2    studies did not preclude California from reducing Medi Cal reimbursement rates." *Managed*

3    *Pharmacy Care*, 716 F.3d at 1245.  Thus, the Secretary had "set forth her interpretation, through

4    her approvals of the SPAs, that § 30(A) does not prescribe any particular methodology a State

5    must follow before its proposed rates may be approved." *Id.*  The Court therefore found the case

6    before it distinguishable from *Orthopaedic Hospital v. Belshe*, 103 F.3d 1491 (9th Cir.1997)   in

7    which the Court acted without the benefit of the Secretary's interpretation and found that § 30(A)

8    required cost studies.  *Managed Pharmacy Care*, 716 F.3d at 1245 46.

9           Turning to the issue of deference, *Managed Pharmacy Care* found the first *Mead* prong

10   "easily satisfied" because Congress expressly delegated to the Secretary the authority to interpret

11   § 30(A) and to determine whether a state plan conforms to the federal requirements.  *Id.* at 1246.

12   The Court also found the second *Mead* prong satisfied.  *Id.* at 1247 50.  The Court noted that the

13   statute uses broad words like "consistent," "sufficient," "efficiency," and "economy" without

14   prescribing specific procedures that states must take to satisfy those standards.  *Id.* at 1247 48.

15   The Court found that this "amorphous language" suggests that "the agency's expertise is relevant

16   in determining its application." *Id.* at 1248 (quoting *Douglas v. Indep. Living Ctr. of S.*

17   *California, Inc.*, 132 S. Ct. 1204, 1210 (2012)).  The Court also noted the complexity of

18   Medicaid administration, the centrality to the Medicaid program of determining a plan's

19   compliance with  § 30(A) and other federal laws, that the executive had given careful

20   consideration to the Medicaid program's requirements since its inception, and the agency's

21   expertise in "all things Medicaid." *Id.*  The Court thus held that the Secretary's approval of the

22   SPAs was entitled to *Chevron* deference.  *Id.*

23          The Court then held that the Secretary's "interpretation that § 30(A) requires a result, not

24   a particular methodology" was a permissible interpretation of the statute.  *Id.* at 1249.  According

25   to the Court, the statute did not say anything about cost studies or any particular methodology.

26   *Id.*  Instead, § 30(A) requires a certain substantive result, but leaves to the Secretary the decision

27   of how to accomplish this result.  *Id.*

28          Shortly after deciding *Managed Pharmacy Care*, the Ninth Circuit again addressed the

7

1   question of whether to defer to CMS's approval of an SPA.  In *California Association of Rural*

2   *Health Clinics v. Douglas*, 738 F.3d 1007 (9th Cir. 2013), the Court found that the agency's SPA

3   approval was not entitled to deference because Congress had spoken directly and clearly to the

4   precise question there at issue.  *Id.* at 1014.  In *California Association*, the relevant statute

5   required Medicaid state plans to cover, *inter alia*, "rural health clinic services" and "Federally-

6   qualified health center services"   both of which incorporate "physicians' services."  *Id.* (citing

7   42 U.S.C. §§ 254b(a)(1); 1395x(r)(1)-(5); 1395x(aa)(2), (4); 1396d(*l*)(1)-(2); 1396d(a)(5)(A)).

8   According to the Court, the statute "outlines specifically the types of services provided by RHCs

9   and FQHCs that a state plan must cover."  *Id.*  In interpreting the statute, the Court noted that the

10  relevant statute specifically defined a physician to include "doctors of medicine and osteopathy,

11  doctors of dental surgery or dental medicine, doctors of podiatry, doctors of optometry and

12  chiropractors."  *Id.* at 1016.  The Court found the clear statutory language at issue there

13  distinguishable from the "amorphous," "broad," and "diffuse" language at issue in *Managed*

14  *Pharmacy Care*.  *Id.*  Thus, the Court found that deference to the agency's decision was not

15  warranted.  *Id.*

16              2.   Level of Deference

17       Here, Plaintiffs focus on the portion of  § 30(A) requiring that payments under states'

18  Medicaid plans be "sufficient to enlist enough providers so that care and services are available

19  under the plan at least to the extent that such care and services are available to the general

20  population in the geographic area[.]"  42 U.S.C. § 1396a(a)(30)(A).  Plaintiffs assert that this

21  language requires CMS to compare the general public's access to hospital outpatient services

22  with Medi-Cal beneficiaries' access to hospital outpatient services.  Plaintiffs also assert that

23  such comparison must occur at a more granular level than statewide.

24       Like in *Managed Pharmacy Care*, CMS explicitly approved SPA 08-009B1 as consistent

25  with § 30(A)   even though California did not submit data expressly comparing the total number

26  of providers of hospital outpatient services with the number of participating Medi-Cal hospital

27  outpatient service providers by geographic location (other than statewide).  Thus, through her

28  approval of SPA 08-009B1, the Secretary has set forth her interpretation that § 30A does not

1   require examination of such data.

2       As in *Managed Pharmacy Care*, the first *Mead* prong is "easily satisfied" because

3   Congress has expressly delegated to the Secretary the authority to interpret § 30(A) and to

4   determine whether a state plan conforms to the federal requirements. *Managed Pharmacy Care*,

5   716 F.3d at 1246. The key question is thus whether the Secretary's approval of SPA 08-009B1

6   satisfies the second *Mead* prong.

7       Like *Managed Pharmacy Care*, the Court here addresses the Secretary's interpretation of

8   § 30A and her approval of an SPA both of which are central to the Medicaid program.

9   Moreover, as *Managed Pharmacy Care* noted, the Medicaid program is highly complex, the

10  executive has been involved in interpreting the Medicaid program's requirements since its

11  inception, and the Secretary is an expert in "all things Medicaid." *Managed Pharmacy Care*, 716

12  F.3d at 1248. Finally, as in *Managed Pharmacy Care*, the relevant statutory language is

13  amorphous, broad, and diffuse. The statute uses (in relevant part) phrases such as "sufficient,"

14  "enough providers," "available," and "geographic area" without prescribing any specific

15  procedures that states must undertake to satisfy § 30A's access requirement. This broad

16  language is distinct from the clear and unambiguous language at issue in *California Association*.

17  Thus, unlike in *California Association*, Congress has not spoken directly to the precise question

18  at issue.

19      In light of the foregoing, the Court FINDS that *Managed Pharmacy Care* controls this

20  case. Thus, the Court must defer to the Secretary's approval of SPA 08-009B1.

21      3.      Whether the Secretary's Interpretation is Permissible

22      Because the Court concludes that deference is warranted, it must abide by the Secretary's

23  interpretation of § 30A so long as it is permissible. *Resident Councils of Washington*, 500 F.3d

24  at 1034. "This test is satisfied if the agency's interpretation reflects a plausible construction of

25  the statute's plain language and does not otherwise conflict with Congress' expressed intent." *Id.*

26  (quoting *Or. Trollers Ass'n v. Gutierrez*, 452 F.3d 1104, 1116 (9th Cir.2006), *cert. denied*, 549

27  U.S. 1338 (2007)). "An agency's interpretation prevails if it is a reasonable construction of the

28  statute, whether or not it is the only possible interpretation or even the one a court might think

1    best." *Managed Pharmacy Care*, 716 F.3d at 1249 (internal quotation marks and citation

2    omitted).

3         As *Managed Pharmacy Care* held, § 30A requires only a substantive result; it does not

4    prescribe procedures for achieving that result.  It makes no mention of access studies or other

5    particular procedures.  Instead, it leaves the decision of how to achieve this result to the

6    Secretary.  In relevant part, § 30A requires rates to be sufficient to "enlist enough providers so

7    that care and services are available under the plan at least to the extent that such care and services

8    are available to the general population in the geographic area[.]"  42 U.S.C. § 1396a(a)(30)(A).

9    The statute does not expressly require the Secretary to compare the total number of providers to

10   the number of providers participating in Medi-Cal; nor does the statute expressly require the

11   Secretary to undertake such a comparison at a more granular geographic level than statewide.[5]

12   Thus, the Secretary's conclusion that § 30A may be satisfied without such an analysis is a

13   plausible construction of the statute's plain language and does not otherwise conflict with

14   Congress's expressed intent.  Moreover, as discussed below, this is not a case where "California

15   did nothing whatever to study the likely effects of its [SPA] on . . . availability of service

16   providers[.]"  *Arc of California v. Douglas*, 757 F.3d 975, 988 (9th Cir. 2014).

17        For the aforementioned reasons, the Court FINDS that the Secretary's interpretation of §

18   30A is permissible.  The Court thus turns to whether the Secretary's approval of SPA 08-009B1

19   was arbitrary and capricious under the APA.

20               **4.**      <u>Whether the Secretary's Approval Was Arbitrary and Capricious</u>

21        Plaintiffs assert that the Secretary's approval of SPA 08-009B1 was arbitrary and

22   capricious because: (1) the Secretary failed to compare the access of Medi-Cal beneficiaries to

23   hospital outpatient services with that of the general public; and (2) the Secretary failed to account

24   for the effect of the Emergency Medical Treatment and Active Labor Act ("EMTALA") on

25   Medi-Cal beneficiaries' access to care.

26   _____

27   [5]  Additionally, as other courts have noted, the term "geographic area" used in the Medicaid Act
     could have any number of meanings.  *See Methodist Hospitals, Inc. v. Sullivan*, 91 F.3d 1026,
28   1029 31 (7th Cir. 1996) (stating that "geographic area" could "mean many things" and rejecting
     the plaintiffs' argument that Indiana was required to conduct comprehensive studies of supply and
     demand in every part of the state).

1    Under the APA, a court must hold unlawful and set aside an administrative agency's

2    action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

3    law[.]" *California v. U.S. Dep't of Labor*, 76 F. Supp. 3d 1125, 1135 (E.D. Cal. 2014) (quoting 5

4    U.S.C. § 706). Judicial review under the APA is narrow. An agency's action is arbitrary and

5    capricious if "the agency relies on factors Congress has not intended it to consider, fails to

6    consider an important aspect of the problem, or offers an explanation that runs counter to the

7    evidence before the agency." *Managed Pharmacy Care*, 716 F.3d at 1250 (citing *Motor Vehicle*

8    *Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). A court must "uphold an

9    agency action even if it is made with less than ideal clarity as long as the agency's path may

10   reasonably be discerned from the record." *Id.* (internal quotation marks omitted) quoting *Motor*

11   *Vehicle Mfrs. Ass'n*, 463, U.S. at 23).

12   Plaintiffs understate the degree to which the Secretary examined Medi-Cal beneficiaries'

13   access to hospital outpatient services as compared to that of the general public. Here, it is

14   undisputed that CMS originally disapproved of SPA 08-009B1 because California failed to

15   provided sufficient information regarding the impact of the proposed cuts on beneficiary access

16   to hospital outpatient services. Thereafter, California submitted additional documentation

17   regarding the impact of SPA 08-009B1 on beneficiary access. In approving SPA 08-009B1,

18   CMS expressly stated that it had "been working with the State to refine the information initially

19   submitted and, as a result of this collaborative process, the State was able to provide metrics that

20   adequately demonstrated beneficiary access." (HHS01951.) In its letter, CMS stated that

21   because California had implemented some of the rate reductions, it was able to study data from

22   fiscal years 2008 2010. Thus, CMS stated that it was able to find that the rate reductions

23   "complied with section 1902(a)(30)(A) of the Act so that care and services are available at least

24   to the extent that care and services are available to the general population in the geographic

25   area." (HHS01952.)

26   The record shows that California submitted to CMS a document entitled "Medi-Cal Fee-

27   for-Service Access Analysis: Hospital Outpatient & Hospital Inpatient Services."

28   (HHS01374 80.) This document details DHCS's assessment of Medi-Cal access based on: (1)

3-year trends in enrollment; (2) 3-year trends in utilization per 1,000 eligible member months; and (3) trends in provider participation rate.  First, DHCS found that from 2007 to 2009 enrollment increased statewide, in metropolitan counties, and in non-metropolitan counties. (HHS01376  77.)  Next, DHCS examined the total utilization of hospital outpatient services per 1,000 beneficiary months for 2007 through 2009.  (HHS01378.)[6]  Data was presented for the entire state, metropolitan counties, and non-metropolitan counties.  (*Id.*)  According to DHCS, utilization remained relatively constant despite an increase in enrollment   which indicates an increase in overall utilization and thus that access to hospital outpatient services remained constant from 2007 to 2009.  (*Id.*)  Finally, DHCS examined the percentage of hospitals providing hospital outpatient services to Medi-Cal beneficiaries from 2007 to 2009. (HHS01379.)  This data was presented only for the entire state and not subdivided by metropolitan and non-metropolitan counties.  The data showed that 81 percent of hospitals provided hospital outpatient services to Medi-Cal beneficiaries in 2007 and 2008, and that 80 percent of hospital provided such services to Medi-Cal beneficiaries in 2009.  (*Id.*)

Thus, contrary to Plaintiffs' argument, California presented to CMS data examining the rate reduction's impact on beneficiaries' access to care.  Moreover, inherent in the data regarding the percentage of hospitals providing outpatient services to beneficiaries is a statewide comparison of the total number of hospital outpatient service providers to the number of hospitals providing outpatient services to Medi-Cal beneficiaries.  Given that California separated data for the other two indicia into metropolitan and non-metropolitan counties, and that the vast majority of hospitals statewide provided services to Medi-Cal beneficiaries, California's failure to present more granular information regarding the percentage of hospitals providing outpatient services to Medi-Cal beneficiaries does not render CMS's approval of SPA 08-009B1 arbitrary and capricious.  CMS could reasonably have found that if the vast majority of hospitals provided outpatient services to beneficiaries during the relevant time period, and if enrollment increased and utilization remained constant for both metropolitan and non-metropolitan counties,

---

[6]  Data regarding enrollment and utilization were further subdivided into broad age groups   adults and children.  (HHS01376  78.)  These age groups were further divided into the following subpopulations: aged, blind/disabled, families, "other," and undocumented.  (*Id.*)

1   that the rates were sufficient to "enlist enough providers so that care and services are available

2   under the plan at least to the extent that such care and services are available to the general

3   population in the geographic area[.]" 42 U.S.C. § 1396a(a)(30)(A). On this record, this data is

4   thus sufficient even if "geographic area" means some area smaller than the entire state.

5       California also submitted a plan for monitoring beneficiary access to the relevant services.

6   Under this plan, California would monitor predetermined metrics on a quarterly or annual basis

7   to ensure that beneficiary access to services was comparable to that of the general public.

8   (HHS01952.) In its letter approving SPA 08-009B1, CMS stated that it believed the monitoring

9   plan would allow California to ensure that payments remained consistent with § 30A. (*Id.*)

10      The data that CMS examined with respect to SPA 08-009B1 is similar to that which the

11  Ninth Circuit found adequate in *Managed Pharmacy Care*. That Court found that the Secretary's

12  approval of two SPAs was neither arbitrary nor capricious. *Managed Pharmacy Care*, 716 F.3d

13  at 1250 51. In the approval process underlying *Managed Pharmacy Care*, DHCS had presented

14  data regarding (1) the total number of providers by geographic location and participating

15  Medi Cal providers by geographic location, "(2) the '[t]otal number of Medi Cal beneficiaries

16  by eligibility type,' (3) '[u]tilization of services by eligibility type over time,' and (4) an

17  '[a]nalysis of benchmark service utilization where available.'" *Id.* at 1250. The Court noted that

18  DHCS's approach tracked a congressionally-established commission's three-pronged approach

19  for studying access. *Id.* The Court also found that CMS appropriately considered California's

20  proposed monitoring plan as supporting the SPAs' compliance with § 30A. *Id.* Thus, the Court

21  criticized the district court for "delv[ing] into the minutiae of the Secretary's approval" and held

22  that the Secretary's approval of the SPAs was neither arbitrary nor capricious. *Id.* at 1250 51.

23      As in *Managed Pharmacy Care*, DHCS presented data examining the proportion of

24  hospitals providing outpatient services to Medi-Cal beneficiaries, the total number of Medi-Cal

25  beneficiaries over time, and the utilization of services over time. Also as in *Managed Pharmacy*

26  *Care*, California submitted a comprehensive monitoring plan to ensure that beneficiaries' access

27  to hospital outpatient services complies with § 30A. Based on its consideration of this data,

28  California's monitoring plan, and of stakeholder input, CMS determined that SPA 08-009B1

13

1    complies with § 30A. (HHS01952.) Thus, as in *Managed Pharmacy Care*, the Secretary

2    "neither failed to consider an important aspect of the problem, nor relied on factors Congress did

3    not intend it to consider." *Managed Pharmacy Care*, 716 F.3d at, 1251. "Because the agency's

4    path can reasonably be discerned," the Secretary's approval of SPA 08-009B1 was neither

5    arbitrary nor capricious. *Managed Pharmacy Care*, 716 F.3d at 1251.

6         This result is true even though CMS did not consider the "[t]otal number of [hospital

7    outpatient service] providers by . . . geographic location and participating Medi-Cal providers by

8    . . . geographic area[.]" (HHS01951.) CMS's October 27, 2011 letter approved SPA 08-009B1

9    and two other SPAs. In discussing the data it considered, CMS's letter stated that "[i]n *general*,

10   the metrics included data which provided: [t]otal number of providers by type and geographic

11   location and participating Medi- Cal providers by type and geographic area . . . ." (*Id.*)

12   Defendant admits that this statement refers to data regarding services other than hospital

13   outpatient services and that California never submitted such data regarding hospital outpatient

14   services. Nevertheless, CMS's letter stated only that the metrics it considered regarding all of the

15   SPAs collectively there at issue generally included such data. It did not state that it actually

16   considered this data with respect to hospital outpatient services. Moreover, as discussed above,

17   CMS was not required to consider such data.

18        Finally, the Secretary's approval of SPA 08-009B1 is not arbitrary and capricious because

19   the Secretary failed to consider the effect of EMTALA on access. EMTALA requires hospital

20   emergency rooms to treat all patients with emergency conditions regardless of their ability to pay.

21   Thus, Plaintiffs argue that EMTALA could induce hospitals to provide outpatient services to

22   beneficiaries even if the Medi-Cal rates are inadequate. Plaintiffs argue that § 30A requires that

23   *rates* be adequate to ensure that beneficiaries have equal access to services as the general public.

24   Plaintiffs thus assert that the Secretary was required to consider whether the rates would be

25   adequate to ensure beneficiaries' access to hospital outpatient services absent EMTALA.

26        There is no express requirement in § 30A mandating that states examine whether rates are

27   adequate absent EMTALA or any other similar statute. Nor is it clear from § 30A's language

28   that beneficiaries' access to care must be because of the Medi-Cal rates and not because of the

14

1  rates plus some other influence.  Additionally, not all hospital outpatient services fall within

2  EMTALA.

3        Plaintiffs' reliance on the Third Circuit's decision in *Christ the King Manor, Inc. v. Sec'y*

4  *U.S. Dep't of Health & Human Servs.*, 730 F.3d 291 (3d Cir. 2013), is unavailing.  There, the

5  Third Circuit held that the approval of a Pennsylvania SPA was arbitrary and capricious.  *Id.* at

6  308  12.  The Court noted that the administrative record was particularly thin and that what

7  limited data was available was not actually indicative of the SPA's compliance with § 30A.  *Id.*

8  at 313  14.  The Court also held that independent statutory assurances were not alone sufficient to

9  satisfy § 30A.  *Id.*  311  12.  Unlike *Christ the King Manor*, California submitted supportive data

10 indicating that SPA 08-009B1's rates comply with § 30A.[7]  Moreover, no party argues that

11 EMTALA's guaranty of access is alone sufficient to satisfy § 30A.  Instead the issue before this

12 Court is whether the Secretary was required to estimate what access to hospital outpatient

13 services would be in a world without EMTALA.  As discussed above, § 30A contains no such

14 requirement.[8]

15       For the aforementioned reasons, the Court FINDS that the Secretary's approval of SPA 08-

16 009B1 was neither arbitrary, capricious, or otherwise in violation of the APA.  Accordingly, the

17 Court GRANTS Defendant's motion for summary judgment and DENIES Plaintiffs' motion.

18

19

20

21

22

_____

23 [7]  The fact that such data was presented in a 7-page report does not render this record precariously
   thin.  On this record, quality trumps quantity    the report may be concise, but it presents adequate
24 data.

25 [8]  For similar reasons, it was not arbitrary and capricious for the Secretary to retroactively approve
   the 10 percent rate cut for services rendered between July 2008 and February 2009 after approving
26 the April 2009 supplemental payments.  Contrary to Plaintiffs' assertion, approving the
   supplemental payments did not amount to a tacit admission that SPA 08-009B1's rates were
27 inadequate to ensure beneficiaries' access to care.  First, the fact that supplemental payments were
   appropriate beginning in April 2009 does not indicate that the rates paid before that date were
28 inadequate.  Moreover, there is no requirement in §30A that states that the rates' adequacy cannot
   be considered in light of other state-provided payments (such as California's supplemental
   payments).

**V.   ORDER**

   1.  For the aforementioned reasons, the Court GRANTS Defendants' motion for summary judgment and ENTERS JUDGMENT in Defendant's favor on both of Plaintiffs' claims.[9]

   2.  For the aforementioned reasons, the Court DENIES Plaintiffs' motion for summary judgment.

   **IT IS SO ORDERED.**


Dated: September _17_, 2015

_____
STEPHEN V. WILSON
United States District Judge

---

[9]   Defendant also asserts that Plaintiffs' claims fail to the extent that they claim that the Secretary's approval was arbitrary and capricious because it failed to comply with the Secretary's own public statements regarding the need for transparency in the SPA approval process. Specifically, in their amended complaint, Plaintiffs assert that the Secretary failed to afford to interested parties meaningful access to the information exchanged between the Secretary and California.  Plaintiffs fail to respond to Defendant's argument or to point to any evidence in the administrative record supporting the position expressed in their amended complaint.  The Court thus finds that Defendant is entitled to summary judgment on this issue.