ROBERT C. LEVENTHAL, CA Bar No. 119969
rleventhal@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3500
LOS ANGELES, CA 90071-2411
TELEPHONE: 213.972.4500
FACSIMILE: 213.486.0065

Attorneys for Plaintiffs HOSPITAL OF BARSTOW, INC., et al.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HOSPITAL OF BARSTOW, INC., ET AL.,<br>Plaintiff,<br>vs.<br>ERIC D. HARGAN, ACTING SECRETARY OF UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br>Defendant. | Case No. 11-CV-10638-SVW-MAN<br>**OPENING BRIEF REGARDING PROCEDURES ON REMAND FROM THE NINTH CIRCUIT COURT OF APPEAL**<br>Complaint Filed: December 22, 2011<br>FAC Filed: January 27, 2012<br>Judge: Hon. Stephen V. Wilson |

TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. LEGAL BACKGROUND .......... 1

A. FEDERAL MEDICAID LAW .......... 1

B. MEDI-CAL — CALIFORNIA'S MEDICAID PROGRAM .......... 2

C. THE NINTH CIRCUIT DECISION .......... 3

III. ARGUMENT .......... 4

A. FEDERAL LAW REQUIRES A VALID EVIDENIARY BASE BEFORE A STATE PLAN AMENDMENT CAN BE IMPLEMENTED .......... 5

IV. CONCLUSION .......... 7

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Aids Healthcare Foundation v. Douglas*, 666 Fed.Appx. 601 (Ninth Circuit, 2016) ........ 6

*Cal. Ass'n of Rural Health Clinics v. Douglas*, 738 F.3d 1007 (Ninth Circuit, 2013) ........ 6

*Developmental Services Network v. Douglas*, 666 F.3d 540 (9th Cir., 2011) ........ 6

*Exeter Memorial Hosp. Ass'n v. Belshe*, 145 F.3d 1106 (1998) ........ 6

*Hoag Memorial Hospital Presbyterian v. Price*, 866 F.3d 1072 (2017) ........ 4, 6

*Kansas Health Care Ass'n, Inc. v. Kansas Dept. of Social and Rehabilitation Services*, 754 F.Supp. 1502 (1990), reversed on other grounds, 958 F.2d 1018 (1992) ........ 1, 7

**Federal Statutes**

42 U.S.C. § 1396 ........ 1, 2

42 U.S.C. § 1396a(a)(5) ........ 2

42 U.S.C. § 1396a(a)(30)(A) ........ 1, 2, 3

**California Statutes**

Cal. Welf. & Inst. Code § 14000 ........ 2

**Other Authorities**

42 C.F.R. § 430.0 ........ 2

42 C.F.R. § 430.15 ........ 2

42 C.F.R. § 431.10 ........ 2

42 C.F.R. § 447.201(b) .......... 2

42 C.F.R. § 447.256(c) .......... 6, 7

22 Cal. Code of Regs. § 50000 .......... 2

# I. INTRODUCTION

This case challenges the adequacy of the Centers for Medicare & Medicaid Services' ("CMS") approval of a State Plan Amendment ("SPA") implementing a 10% Medi-Cal hospital outpatient rate cut that was in effect for eight months from July 2008 through February 2009. The Ninth Circuit reversed CMS's approval of the rate cut because there was nothing in the administrative record comparing the access of Medi-Cal patients to hospital outpatient services with the access of the general public. Since the Medicaid Act requires such a comparison, the Ninth Circuit held that "that the Secretary's approval of the SPA violated § 30(A), and was arbitrary and capricious."

Instead of acknowledging that the administrative record was inadequate to support the rate cut and withdrawing its approval, CMS now wants to have a do-over and consider approving a rate cut that was implemented in the absence of an evidentiary base of support. CMS's position is contrary to state and federal law and CMS's own regulations and ignores the fact **"a state cannot implement a state plan, and later undertake a study after that plan has gone into effect."** *Kansas Health Care Ass'n, Inc. v. Kansas Dept. of Social and Rehabilitation Services*, 754 F.Supp. 1502 (1990), reversed on other grounds, 958 F.2d 1018 (1992). CMS's request for an after the fact do-over should be denied and the Court should enter an order striking down CMS's approval of the rate cut.

# II. LEGAL BACKGROUND

## A. FEDERAL MEDICAID LAW

Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, *et seq*., the Medicaid Statute, authorizes federal financial support to states for medical assistance to low-income persons who are aged, blind, disabled, or members of families with dependent children. The program is jointly financed by the federal and state governments and administered by the states, with the federal financial participation level currently ranging between 50 to 83 percent. In accordance with federal law, states decide eligible beneficiary groups, types and ranges of services, administrative and operative procedures,

and payment level for services. Payment for services is made directly by states to the individuals or entities that furnish the services. *See* 42 C.F.R. § 430.0

In order to receive matching federal financial participation, states must agree to comply with the applicable federal Medicaid law and regulations, 42 U.S.C. §§ 1396, *et seq*. At the state level, the Medicaid program is administered by a single state agency, which is charged with the responsibility of establishing and complying with a state Medicaid plan (the "State Plan") that, in turn, must comply with the provisions of the applicable federal Medicaid law. *See* 42 U.S.C. § 1396a(a)(5); 42 C.F.R. § 431.10. The State Plan must be submitted to the Secretary for approval and must describe the policies and methods to be used to set payment rates for each type of service included in the state Medicaid plan. *See* 42 C.F.R. §§ 430.15 and 447.201(b).

Pursuant to 42 U.S.C. § 1396a(a)(30)(A) ("Section 30"), each state's Medicaid plan must:

> provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary to . . . *assure that payments are consistent with efficiency, economy, and quality of care* ***and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general public in the geographic area***.

*Id.* (emphasis added).

**B. MEDI-CAL — CALIFORNIA'S MEDICAID PROGRAM**

California has elected to participate in the Medicaid program. California has named its program "Medi-Cal."[1] *See* Cal. Welf. & Inst. Code §§ 14000, *et seq*.; 22 Cal. Code of Regs. §§ 50000, *et seq*. The California State Plan (which has been approved by CMS) expressly provides in relevant part:

---

[1] The California State Plan is available on-line through the CMS website for the California Plan. The website address is http://www.dhcs.ca.gov/formsandpubs/laws/pages/californistateplan.aspx.

> "The methodology utilized by the State Agency in establishing payment rates will be as follows:
>
> (a) The development of an evidentiary base or rate study resulting in the determination of a proposed rate.
>
> (b) To the extent required by State or Federal law or regulations, the presentation of the proposed rate at public hearing to gather public input to the rate determination process.
>
> (c) The determination of a payment rate based on an evidentiary base, including pertinent input from the public."

California State Plan, Attachment 4.19-8 Page 1, a true and correct copy of which is attached to the Declaration of Robert C. Leventhal as Ex. A (emphasis added).

**C. THE NINTH CIRCUIT DECISION**

This case involves a challenge to CMS's approval of a State Plan Amendment reducing the rates that California paid for Hospital Outpatient Services. The Medicaid Act requires that the rates "are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area." *Id.* § 1396a(a)(30)(A). The plaintiffs alleged that CMS's approval of the plan violated the Administrative Procedures Act and was arbitrary and capricious because CMS and the state had failed to compare the access of Medi-Cal beneficiaries with that of the general public as required by the express statutory language.

The Ninth Circuit had before it CMS's entire administrative record, which included the evidentiary base that California used in determining the validity of the rate cut. The Ninth Circuit held that it was arbitrary and capricious for CMS to have approved the rate cut because there was nothing in the administrative record comparing the access of the general public with that of Medicare beneficiaries:

> Appellee conceded at oral argument that, as a logical matter, a variable X cannot be established as equal to or greater than a

> variable Y based solely on the properties of X. Rather, the comparison requires some evidence regarding Y. Appellee contends that this logic does not apply, however, to the complicated task of implementing § 30(A)'s requirements for SPAs due to our Managed Pharmacy Care holding that the Secretary need not employ any particular methodology in assessing compliance with § 30(A)'s required substantive results.
>
> *Managed Pharmacy Care* did not suggest that the Secretary's broad discretion to evaluate compliance with the results prescribed by § 30(A) encompasses the ability to abandon logic or disregard the express language of the relevant portion of the statute. Here the Secretary could not have considered whether rates under the challenged SPA would ensure "that care and services are available under the plan at least to the extent that such care and services are available to the general population" absent some consideration of the "care and services [] available to the general population." Because the parties point to no evidence that would inform such a consideration, we hold that the Secretary's approval of the SPA violated § 30(A), and was arbitrary and capricious.

*Hoag Memorial Hospital Presbyterian v. Price*, 866 F.3d 1072, 1082 (2017).

The Ninth Circuit remanded the case to this Court for further proceedings consistent with its opinion.

## III. ARGUMENT

The Ninth Circuit has ruled that the administrative record before CMS (which contained California's administrative record upon which the rate cut was based) did not contain any information comparing the access of Medi-Cal beneficiaries to hospital

outpatient services with the access of the general public to those services and that it was therefore arbitrary and capricious for CMS to approve the State Plan amendment. An issue has now arisen as to what this Court should do with the case on remand. The plaintiffs believe that the Court should enter an order holding that CMS's approval of the State Plan Amendment was arbitrary and capricious and striking it down. CMS argues that it should be given an opportunity revisit the issue and come up with some after the fact justification for the rate cut – a justification that was not considered by California when it implemented the rate cut and which is not supported by data in the administrative record.

If this case involved a rate cut that was still in effect, CMS's position might have merit. However, this case involves a rate cut that expired by its own terms over eight years ago. The case therefore does not involve an existing rate cut which must be approved by CMS before it can go into effect. Instead, it involves a long-expired rate cut, which was illegally implemented by California before it obtained CMS approval. Since the rate cut was not supported by the administrative record when it was illegally implemented in 2008, it is invalid and its implementation was contrary to federal Medicaid law as well as California's State Plan. This invalidity cannot be cured by ex post facto rationalization or analysis. The rate cut was illegal when it was implemented and there is no basis for retroactively validating it almost ten years after its illegal implementation and more than nine years after it expired.

## A. FEDERAL LAW REQUIRES A VALID EVIDENTIARY BASE BEFORE A STATE PLAN AMENDMENT CAN BE IMPLEMENTED

The law in the Ninth Circuit is clear:

> "as we carefully explained in Exeter II, 145 F.3d at 1108, the framework in place made it apparent that just as all plans require federal approval, "all amendments to plans must also be federally approved." *Id*. And that must occur "before implementation." *Id*.

> [8] Thus, we repeat an old refrain: the State was obligated to submit and obtain approval of its SPA before implementation."

*Developmental Services Network v. Douglas*, 666 F.3d 540, 546 (9th Cir., 2011). *See also, Exeter Memorial Hosp. Ass'n v. Belshe, 145 F.3d 1106 (1998); Cal. Ass'n of Rural Health Clinics v. Douglas, 738 F.3d 1007 (Ninth Circuit, 2013); Aids Healthcare Foundation v. Douglas, 666 Fed.Appx. 601 (Ninth Circuit, 2016).* The purpose of this rule is clear: the state must ensure that its rate cut complies with the regulatory requirements prior to implementing it.[2]

CMS's own regulations are consistent with this purpose: 42 C.F.R. § 447.256 (c) provides that "A State plan amendment that is approved will become effective not earlier than the first day of the calendar quarter in which an **approvable amendment** is submitted in accordance with §§ 430.20 of this chapter and 447.253." (Emphasis added.)

The State Plan Amendment at issue was submitted to CMS for approval on or about September 30, 2008 as part of State Plan Amendment 08- 009B1 ("SPA 08-009B1"). *See* CMS letter approving SPA08-009B1, a true and correct copy of which is attached to the Leventhal Declaration as Ex. B. Thus, if SPA 08-009B1 was approvable at the time it was submitted, it could have become effective on the first day of the calendar quarter in which it was submitted.

The Ninth Circuit has held that SPA 08-009B1 was not approvable at the time it was submitted, because it was not supported by the required analysis – a comparison of the access of the general public to the access of Medi-Cal recipients. 866 F.3d at 1082. Even if this glaring deficiency could be corrected by a new analysis of new data in 2017

---

2 In the present case, California implemented the rate cut prior to receiving CMS approval. In fact, CMS's approval of the 2008 rate cut, which was dated October 27, 2011, expressly stated that CMS would not approve rate cuts that would go into effect retroactively because "retroactively implementing rate cuts which might potentially affect current access." CMS approved the rate cut in issue because it had been implemented by California in 2008, despite having not been approved by CMS.

California should not be allowed to benefit from having implemented the rate cut prior to obtaining CMS approval.

or 2018, this would not make SPA 08-009B1 approvable when submitted. It would merely make it approvable on the first day of the quarter in 2017 or 2018 in which the analysis was completed. Since the rate cut is no longer in effect there would be no purpose to such an exercise.[3]

California's State Plan (which has been approved by CMS) further demonstrates the validity of plaintiffs' position. It requires "[t]he determination of a payment rate based on an evidentiary base." In the present case, the Ninth Circuit has held that the evidentiary base (as set forth in the administrative record) did not support the rate cut. *Id.* Since the State Plan required that the rate cut be based on an evidentiary base (and not on an after the fact justification), the Ninth Circuit's holding that no such evidentiary base existed at the time SPA 08-009B1 was submitted is determinative and there is no basis for revisiting the issue. As the Court held in *Kansas Health Care Ass'n, Inc. v. Kansas Dept. of Social and Rehabilitation Services*, 754 F.Supp. 1502 (1990), reversed on other grounds, 958 F.2d 1018 (1992), **"a state cannot implement a state plan, and later undertake a study after that plan has gone into effect."** The Court should therefore enter an order striking down CMS's approval of the rate cut on the grounds that it was arbitrary and capricious and unsupported by the administrative record and should not allow CMS to re-do its analysis.

## IV. CONCLUSION

The plaintiffs were subject to an illegal rate cut in 2008. Now that the Ninth Circuit has held that CMS's approval of the rate cut was arbitrary and capricious, the approval should be stricken down and so that the plaintiffs can proceed with their state court lawsuit seeking restitution of the amounts that they were deprived of as a result of the illegal rate cut. The Court should not allow CMS to re-do its analysis.

---

[3] There is, however, a purpose in holding that CMS's approval of SPA 08-009B1 was arbitrary and capricious. The plaintiffs have a state court lawsuit challenging the rate cut and seeking a refund of the monies improperly withheld from them as a result of the implementation of the rate cut. This lawsuit has been stayed pending resolution of this lawsuit. If CMS's approval of the rate cut is overturned, it will be relevant to the state court lawsuit.

DATED: December 18, 2017

**FOLEY & LARDNER LLP**
Robert C. Leventhal

*Robert C. Leventhal*
Robert C. Leventhal
Attorneys for Plaintiffs HOSPITAL OF BARSTOW, INC., et al.